**2023-1317**

# United States Court of Appeals for the Federal Circuit

ROKU, INC.,

*Appellant,*

– v. –

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

UNIVERSAL ELECTRONICS, INC., GEMSTAR TECHNOLOGY (QINZHOU) CO. LTD., GEMSTAR TECHNOLOGY (YANGZHOU) CO. LTD., C.G. DEVELOPMENT LTD., UNIVERSAL ELECTRONICS BV, CG MEXICO

*(For Continuation of Caption See Inside Cover)*

*On Appeal from the United States International Trade Commission in Case No. 337-TA-1263*

## BRIEF FOR INTERVENORS

KIRK T. BRADLEY
M. SCOTT STEVENS
STEPHEN R. LAREAU
NICHOLAS C. MARAIS
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000

THOMAS W. DAVISON
ADAM D. SWAIN
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 2004
(202) 239-3300

*Counsel for Universal Electronics Inc., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., Universal Electronics BV, CG México Remote Controls, S. de R.L. de C.V., Charter Communications, Inc., Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, Altice USA, Inc., Cablevision Systems Corporation, Cequel Communications, LLC, and WideOpenWest, Inc.*

*(For Continuation of Appearances See Inside Cover)*

FEBRUARY 5, 2024

 COUNSEL PRESS   (800) 4-APPEAL • (326866)

REMOTE CONTROLS, S. DE R.L. DE C.V., CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, ALTICE USA, INC., CABLEVISION SYSTEMS CORPORATION, CEQUEL COMMUNICATIONS, LLC, WIDEOPENWEST, INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., LG ELECTRONICS INC., LG ELECTRONICS USA, INC.,

*Intervenors.*

HOLLY HAWKINS SAPORITO
NICHOLAS TANG TSUI
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street NE
Atlanta, GA 30309
(404) 881-7000

– and –

RYAN W. KOPPELMAN
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
(213) 576-1000

*Counsel for Universal Electronics Inc., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., Universal Electronics BV, CG México Remote Controls, S. de R.L. de C.V., Charter Communications, Inc., Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, Altice USA, Inc., Cablevision Systems Corporation, Cequel Communications, LLC, and WideOpenWest, Inc.*

JAMES J. LUKAS, JR.
CALLIE SAND
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 456-8400

*Counsel for LG Electronics Inc. and LG Electronics USA, Inc.*

ANDREW R. SOMMER
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
(703) 749-1300

– and –

RICHARD A. EDLIN
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
(212) 801-9200

*Counsel for Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

CYRUS T. FRELINGHUYSEN
GREENBERG TRAURIG, LLP
2101 L Street, NW
Washington, DC 20037
(202) 331-3000

*Counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., LG Electronics Inc. and LG Electronics USA, Inc.*

# PATENT CLAIMS

## U.S. PATENT NO. 8,738,875

1. [1pre] A method for setting up a Remote Control that includes a keyboard, a processor, a memory, and a transmitter, the method comprising the steps of:

[a] entering, via the keyboard and processor, a configuration mode;

[b] accepting, via the keyboard and processor, an identifier-entry; and

[c] scanning, via the processor and memory, th[r]ough remote control code-sets in a database stored in the memory of the Remote Control, wherein the step of scanning comprises:

[c(1)] in case that the identifier-entry is a brand-identifier that identifies a brand, (i) iterating, via the processor and memory, through the remote control code-sets corresponding to the brand and (ii) testing said remote control code-sets by sending, via the transmitter, to a Consumer Electronic device for a given iteration, one or more specific control code functions of a corresponding remote control code-set, and

[c(2)] in case that the identifier-entry is a code-set-identifier that identifies a single remote control code-set which in not pointed to by a brand-identifier, testing the single remote control code-set corresponding to the code-set-identifier by sending, via the transmitter, to the Consumer Electronic device one or more specific control code functions of the corresponding single remote control code-set.

10. A non-transitory computer-readable medium embodied with a computer program that comprises computer program code executable by a processor to perform the steps of setting up a Remote Control of claim 1.

## U.S. PATENT NO. 7,388,511

5. A method for remote control of at least two like controllable devices, the method comprising:

a) with a remote control device,

inputting a user-specified command for controlling the controllable devices; and

transmitting the user-specified command;

b) with a coding device,

receiving the user-specified command from the remote control device;

adding to the user-specified command a device identifier for identification of at least one of the controllable devices;

transmitting the device identifier and the user-specified command in combination;

c) with one of the like controllable devices,

receiving the device identifier and the user-specified command in combination;

extracting the device identifier;

comparing said extracted device identifier with a further device identifier for identification of the controllable device;

refraining from further operation with the received user-specified command if said identifiers do not match; and

supplying the user-specified command if said identifiers do match;

wherein the remote control device and the coding device are separate devices which are selectively interconnectable and disconnectable, and wherein the step of transmitting the user specified command further includes:

transmitting the user-specified command from the remote control device to controllable devices when the coding device is disconnected and transmitting the user-specified command and the device identifier from the coding device to the controllable devices when the remote control device and the coding device are connected.

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2023-1317 |
| **Short Case Caption** | Roku, Inc. v. ITC |
| **Filing Party/Entity** | Universal Electronics Inc., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd.,C.G. Development Ltd., Universal Electronics BV, and CG México I |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 1/31/2024

Signature: /s/ Kirk T. Bradley

Name: Kirk T. Bradley

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Universal Electronics Inc. | | BlackRock, Inc., Eagle Asset Management, Inc., Carillon Tower Advisors, Inc. |
| Gemstar Technology (Qinzhou) Co. Ltd. | | C.G. Development Ltd., Enson Assets Limited, UEI Hong Kong Private Limited, Universal Electronics BV, Universal Electronics Inc. |
| Gemstar Technology (Yangzhou) Co. Ltd. | | C.G. Development Ltd., Enson Assets Limited, UEI Hong Kong Private Limited, Universal Electronics BV, Universal Electronics Inc. |
| C.G. Development Ltd. | | Enson Assets Limited, UEI Hong Kong Private Limited, Universal Electronics BV, Universal Electronics Inc. |
| Universal Electronics BV | | Universal Electronics Inc. |
| CG México Remote Controls, S. de R.L. de C.V. | | Universal Electronics Inc. |
| Charter Communications, Inc. | | None |
| Spectrum Management Holding Company, LLC | | Charter Communications, Inc. |
| Charter Communications Operating LLC | | Charter Communications, Inc. |
| Altice USA, Inc. | | None |
| Cablevision Systems Corporation | | Altice USA, Inc. |

☑     Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

---

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable       ☑    Additional pages attached

| | | |
|---|---|---|
| Katherine G. Rubschlager | Monica Ruiz | Richard L. Brophy |
| Michael C. Deane | Jordan A. Sigale | Wenkai Tzeng |
| Katie Donald | Dunlap Codding PC | Zachary C. Howenstine |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)    ☐   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable       ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**Certificate of Interest – Additional Pages**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>For all entities below this is not applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| Cequel Communications, LLC | | Altice USA, Inc. |
| WideOpenWest, Inc. | | None |

**4. Legal Representatives.**

Armstrong Teasdale LLP

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1317

**Short Case Caption** Roku, Inc. v. International Trade Commission

**Filing Party/Entity** Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/20/2023

Signature: /s/ Andrew R. Sommer

Name: Andrew R. Sommer

FORM 9. Certificate of Interest

| **1. Represented Entities.**<br>Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.**<br>Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.**<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Samsung Electronics Co., Ltd. | | None |
| Samsung Electronics America, Inc. | | Samsung Electronics Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐      None/Not Applicable            ☐      Additional pages attached

| | | |
|---|---|---|
| Wen Xue | Sarah E. Atlas | Charles J. Berk |
| Rose Cordero-Prey | Gary R. Jarosik | |
| | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐      None/Not Applicable            ☐      Additional pages attached

| | | |
|---|---|---|
| Roku, Inc. v. Universal Electronics Inc., et al., 8:21-cv-00658 (C.D. Cal.) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑      None/Not Applicable            ☐      Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1317

**Short Case Caption** Roku, Inc. v. International Trade Commission

**Filing Party/Entity** LG Electronics Inc. and LG Electronics USA, Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/20/2023

Signature: /s/ James J. Lukas, Jr.

Name: James J. Lukas, Jr.

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| LG Electronics Inc. | None | None |
| LG Electronics USA, Inc. | None | LG Electronics Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Mark Galis | Benjamin Gilford | Erik Bokar |
| Maja Sherman | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

PATENT CLAIMS ....................................................................... i

CERTIFICATES OF INTEREST ........................................... iii

TABLE OF AUTHORITIES ................................................ xvi

TABLE OF ABBREVIATIONS AND CONVENTIONS .................... xx

STATEMENT OF RELATED CASES .............................. xxii

STATEMENT OF THE ISSUES ............................................ 1

STATEMENT OF THE CASE ................................................ 2

I.    Introduction ................................................................ 2

II.   The Commission Found Claim 10 of the '875 Patent Invalid as Both Anticipated and Obvious ...................................... 5

    A.    The Alleged Invention of the '875 Patent ................. 5

    B.    Claim 10 of the '875 Patent ................................. 6

    C.    The Operation of the Philips Prior Art Remote Controls ........... 7

    D.    The Commission Found That the Philips Prior Art Remote Controls Invalidate Claim 10 ................................. 9

III.  The Commission Found That Roku's Hypothetical Domestic Industry Product Does Not Satisfy the Technical Prong ................ 10

    A.    Roku Deliberately Deferred Development of the Gazelle Remote to Work on Other Projects ......................... 12

    B.    There Was No Patent-Practicing Product at the Time of the Complaint or at the Close of Fact Discovery ............ 13

IV.   The Commission Determined That Claim 5 of the '511 Patent Is Invalid as Indefinite ................................................ 14

SUMMARY OF THE ARGUMENT ...................................... 16

ARGUMENT .................................................................. 19

I.    The Applicable Standards of Review ...............................................19

II.   Substantial Evidence Supports the Commission's Finding That Claim 10 of the '875 Patent Is Invalid ..................................................20

      A.   The Philips Prior Art Remote Controls Anticipate Claim 10 .................22

           1.   Roku's Claim Construction Contradicts the Intrinsic Evidence ......24

           2.   The PTAB Explicitly Rejected Roku's Construction......................31

      B.   Claim 10 Is Obvious Under Roku's Claim Construction........................32

           1.   Substantial Evidence Supports the Motivation to Modify the Philips Prior Art Remote Controls ...................................................33

           2.   The Commission Correctly Found a Reasonable Expectation of Success................................................................................34

           3.   The Modification Does Not Rely on Hindsight ...............................35

III.  Substantial Evidence Supports the Commission's Finding That Roku Failed to Satisfy the Technical Prong ...........................................36

      A.   The Commission Correctly Evaluated Domestic Industry at the Time of the Complaint ........................................................................37

           1.   The Statutory Text Confirms Domestic Industry Is Evaluated at the Time of the Complaint................................................................41

           2.   The Legislative History Confirms Domestic Industry Is Evaluated at the Time of the Complaint...........................................43

           3.   Commission Precedent Confirms That Domestic Industry Is Evaluated at the Time of the Complaint...........................................44

      B.   Roku Failed to Show a Domestic Industry Was "In the Process of Being Established," Both at the Time of the Complaint and at the Close of Fact Discovery ........................................................................45

           1.   Roku Did Not Take the Necessary Tangible Steps to Show a Domestic Industry "in the Process of Being Established" ...............46

2.      Roku Did Not Show a Significant Likelihood That a Domestic Industry Will Exist in Future ............................................48

C.      Roku Failed to Show Actual "Articles Protected by the Patent" .............48

D.      The ALJ Properly Excluded Roku's Untimely Evidence .......................53

1.      Background ...................................................................................53

2.      The ALJ's Decision Was Based on Governing Precedent and Was Not an Abuse of Discretion .......................................................54

3.      This Court Should Not Consider Roku's Untimely Evidence That Is Not in the Record ..................................................................55

IV.   This Court Should Not Vacate, and Should Affirm, the Commission's Determination That Claim 5 of the '511 Patent Is Indefinite .........................56

A.      An Actual, Live Controversy Remains Over Claim 5 ...........................56

B.      The Only Question on Appeal for Claim 5 Is a Legal Question ..............57

C.      Judicial Efficiency Favors Appellate Resolution of the Legal Question Now ............................................................................................59

D.      Roku Forfeited Any Argument That This Court Should Reverse the Commission's Indefiniteness Determination .........................................60

CONCLUSION ...........................................................................................60

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alloc, Inc. v. Int'l Trade Comm'n,*
 342 F.3d 1361 (Fed. Cir. 2003)...........................................................51

*Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.,*
 876 F.3d 1350 (Fed. Cir. 2017)...........................................................19

*Bally/Midway Mfg. v. U.S. Int'l Trade Comm'n,*
 714 F.2d 1117 (Fed. Cir. 1983)........................................ 37, 38, 43, 45

*Boeing Co. v. United States,*
 968 F.3d 1371 (Fed. Cir. 2020)...........................................................60

*Broadcom Corp. v. Int'l Trade Comm'n,*
 28 F.4th 240 (Fed. Cir. 2022)..............................................................49

*Certain Collapsible Sockets for Mobile Electronic Devices and
 Components Thereof,*
 Inv. No. 337-TA-1056, Comm'n Op., 2018 WL 7680630
 (July 9, 2018) ................................................................................ 39, 45

*Certain Digital Cameras, Software, and Components Thereof,*
 Inv. No. 337-TA-1059, Order No. 59, 2018 WL 1905571
 (Feb. 26, 2018) ...................................................................................55

*Certain Replacement Auto. Serv. And Collision Parts and Components
 Thereof,*
 Inv. No. 337-TA-1160, Order No. 22, 2019 WL 7558359
 (Dec. 31, 2019)....................................................................................55

*Certain Stringed Musical Instruments and Components Thereof,*
 Inv. No. 337-TA-586, Comm'n Op., 2008 WL 2139143
 (May 16, 2008).....................................................................................46

*Certain Television Sets, Television Receivers, Television Tuners, and
 Components Thereof,*
 Inv. No. 337-TA-910, Comm'n Op., 2015 WL 6755093
 (Oct. 30, 2015) ....................................................................................45

*Certain Thermoplastic-Encapsulated Elec. Motors, Components Thereof, and Products and Vehicles Containing Same II*,
Inv. No. 337-TA-1073, Comm'n Op., 2019 WL 9596564
(Aug. 12, 2019) ...........................................................................45

*Certain Video Game Systems and Controllers*,
Inv. No. 337-TA-743, Comm'n Op., 2012 WL 13171643
(Jan. 20, 2012)............................................................................37

*Cont'l Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019)....................................................29

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010)..................................................51

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)....................................................................43

*EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*,
766 F.3d 1338 (Fed. Cir. 2014)..................................................28

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999)..................................................19

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014)..................................................29

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
527 F.3d 1379 (Fed. Cir. 2008)............................................. 30-31

*INVT SPE v. International Trade Commission*,
46 F.4th 1361 (Fed. Cir. 2022) ..................................................58

*John Messalingua Assocs. v. Int'l Trade Comm'n*,
660 F.3d 1322 (Fed. Cir. 2011)..................................................19

*Laerdal Med. Corp. v. Int'l Trade Comm'n*,
910 F.3d 1207 (Fed. Cir. 2018)..................................................41

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004).............................................. 29, 30

*Linear Tech. Corp. v. Int'l Trade Comm'n*,
566 F.3d 1049 (Fed. Cir. 2009)..................................................19

*McIntosh v. DOD*,
53 F.4th 630 (Fed. Cir. 2022)....................................................60

*Merck & Cie v. Gnosis S.P.A.*,
  808 F.3d 829 (Fed Cir. 2015) ................................................................34

*Microsoft Corp. v. Int'l Trade Comm'n*,
  731 F.3d 1354 (Fed. Cir. 2013) ............................................. 49, 51, 59

*Microsoft Corp. v. ITC*,
  No. 2012-1445, 2014 WL 10209132 (Fed. Cir. Jan. 3, 2014) ..................... 56, 57

*Motiva, LLC v. Int'l Trade Comm'n*,
  716 F.3d 596 (Fed. Cir. 2013) ........................................................ *passim*

*Motorola Mobility, LLC v. Int'l Trade Comm'n*,
  737 F.3d 1345 (Fed. Cir. 2013) ...............................................................19

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) .............................................................................14

*NEC Corp. v. United States*,
  151 F.3d 1361 (Fed. Cir. 1998) ...............................................................53

*Nevro Corp. v. Boston Sci. Corp.*,
  955 F.3d 35 (Fed. Cir. 2020) ........................................................... 57-58

*Osram GmbH v. Int'l Trade Comm'n*,
  505 F.3d 1351 (Fed. Cir. 2007) ...............................................................51

*Philip Morris Prods. S.A. v. ITC*,
  63 F.4th 1328 (Fed. Cir. 2023) ..................................................... 33, 38, 45

*Philips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ...................................................... 29, 30

*Powertech Tech. Inc. v. Tessera, Inc.*,
  660 F.3d 1301 (Fed. Cir. 2011) .........................................................5, 59

*Roku, Inc. v. Int'l Trade Comm'n*,
  No. 22-1386, 2024 WL 202033 (Fed. Cir. Jan. 19, 2024) ...................................2

*Roku, Inc. v. Universal Elecs., Inc.*,
  No. 24-1188 (Fed. Cir. 2024) .............................................................2, 31

*Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC*,
  824 F.3d 999 (Fed. Cir. 2016) ................................................................30

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ...............................................................60

*Spansion, Inc. v. Int'l Trade Comm'n*,
  629 F.3d 1331 (Fed. Cir. 2010) ...................................................... 42, 57

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
   655 F.3d 1364 (Fed. Cir. 2011)......................................................4, 57

*Tessera, Inc. v. International Trade Commission*,
   646 F.3d 1357 (Fed. Cir. 2011)...............................................................58

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996)...........................................................5, 59

*Texas Instruments Inc. v. U.S. International Trade Commission*,
   851 F.2d 342 (Fed. Cir. 1988)...............................................................58

*Universal Elecs., Inc. v. Roku, Inc.*,
   No. IPR2022-00818, 2023 WL 6976666 (PTAB Oct. 23, 2023) ................. 10, 31

*Vizio, Inc. v. ITC*,
   605 F.3d 1330 (Fed. Cir. 2010)...............................................................19

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016)...............................................................19

*Winbond Elecs. Corp. v. Int'l Trade Comm'n*,
   262 F.3d 1363 (Fed. Cir. 2001)...............................................................53

**Statutes & Other Authorities:**

19 C.F.R. § 210.9(a)...................................................................................41

19 C.F.R. § 210.43(b)(3)............................................................................33

19 C.F.R. § 210.43(b)(4)............................................................................33

19 U.S.C. § 1337(a)(1)..............................................................................49

19 U.S.C. § 1337(a)(2)............................................................. 37, 41, 49, 50

19 U.S.C. § 1337(a)(3)....................................................................... 49, 50

19 U.S.C. § 1337(b)(1)..............................................................................41

28 U.S.C. § 1659.......................................................................................15

35 U.S.C. § 112.........................................................................................14

Fed. Cir. R. 27(e) .....................................................................................56

H.R. Rep. No. 100-40 (1987)................................................................ 43, 44

S. Rep. No. 100-71 (1987) ................................................................... 43, 44

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| '511 patent | U.S. Patent No. 7,388,511 (Appx284-292) |
| '875 patent | U.S. Patent No. 8,378,875 (Appx272-283) |
| '875 Intervenors | Intervenors UEI, Charter, Altice, and WOW |
| ALJ | Administrative Law Judge |
| Altice | Intervenors Altice USA, Inc., Cablevision Systems Corporation, and Cequel Communications, LLC |
| Blue Br. *xx* | Opening Brief of Appellant, page *xx* |
| Charter | Intervenors Charter Communications, Inc., Charter Communications Operating, LLC, and Spectrum Management Holding Company, LLC |
| Commission or ITC | U.S. International Trade Commission |
| ID | Initial Determination on Violation of Section 337 and Recommended Determination on Remedy and Bond (Appx38-220) |
| Intervenors | Intervenors UEI, Charter, Altice, WOW, Samsung, and LG |
| IPR | Inter Partes Review |
| LG | Intervenors LG Electronics, Inc. and LG Electronics U.S.A., Inc. |
| Philips Prior Art Remote Controls | Philips PMDVD6, Philips PM725S, Philips PM435S, and Zenith ZN501S |
| POSITA | Person of ordinary skill in the art |
| PTAB | Patent Trial and Appeal Board |
| Roku | Appellant Roku, Inc. |
| Samsung | Intervenors Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. |
| section 337 | 19 U.S.C. § 1337 |
| UEI | Intervenors Universal Electronics, Inc., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology |

| | |
|---|---|
| | (Yangzhou) Co., Ltd., C.G. Development Ltd., Universal Electronics BV, and CG Mexico Remote Controls, S. De R.L. De C.V. |
| USPTO | U.S. Patent and Trademark Office |
| WOW | Intervenor WideOpenWest, Inc. |

## STATEMENT OF RELATED CASES

Intervenors are unaware of any other previous or pending appeal in or from the same agency proceeding in this Court or in any other appellate court. The following cases are pending and may directly affect or be directly affected by this Court's decision in the pending appeal:

- *Roku, Inc. v. Universal Electronics, Inc.*, No. 24-1188 (Fed. Cir.) (appeal related to IPR2022-00818, which found claim 10 of the '875 patent invalid);

- *Universal Electronics, Inc. v. Roku, Inc.*, Appeal No. 24-1241 (Fed. Cir.) (Dec. 6, 2023) (appeal related to claim 11 of the '875 patent);

- *Universal Electronics, Inc. v. Roku, Inc.*, IPR2022-00818 (PTAB) (IPR of the '875 patent, which found claim 10 invalid); and

- *Roku, Inc. v. Universal Electronics, Inc., et al.*, Case No. 8:21-cv-00658 (C.D. Cal.) (stayed pending completion of ITC Investigation No. 337-TA-1263 and appeals thereof).

On October 28, 2023, the PTAB issued a Final Written Decision finding claims 1-5, 8-10, and 14 of the '875 patent unpatentable. *See Universal Elecs., Inc. v. Roku, Inc.*, No. IPR2022-00818, 2023 WL 6976666, (PTAB Oct. 23, 2023). Roku has appealed that decision. *See Roku, Inc. v. Universal Elecs., Inc.*, No. 24-1188 (Fed. Cir.). Affirming the PTAB's decision would render this appeal moot as it relates to the '875 patent.

## STATEMENT OF THE ISSUES

1.     Whether substantial evidence supports the Commission's findings that claim 10 of the '875 patent is invalid as: (i) anticipated if the claim term "iterating, via the processor and memory, through the remote control code-sets" is construed to ***include*** user input, or, in any event, (ii) obvious should the claim term instead be construed to ***exclude*** user input?

2.     Whether substantial evidence supports the Commission's findings that Roku failed to demonstrate it was in the process of establishing a domestic industry for the '875 patent and, further, whether Roku failed to show any actual "articles protected by the patent"?

3.     Whether this Court should refuse to vacate, and should instead affirm, the Commission's determination that claim 5 of the '511 patent is invalid as indefinite, where the invalidity determination involved a purely legal question and that same legal question is at issue in the parties' co-pending litigation in a district court, which will be "bound by stare decisis to abide by any legal precedents established by [this] court"?

## STATEMENT OF THE CASE

### I.    Introduction

Facing an Exclusion Order against it in the 1200 Investigation, which this Court has now affirmed,[1] Roku was desperate to find patents to counter-assert against UEI and UEI's customers.  Appx10476-10477 (48:21-49:18).   So Roku turned to UEI's competitor, Omni, and purchased two patents, the '875 patent and the '511 patent. *Id.*; Appx15208-15211.  Twenty-two days later, Roku filed the 1263 Investigation underlying this appeal.   In that Investigation, Roku asserted infringement by UEI and UEI's customers (Charter, Altice, WOW, Samsung, and LG) and professed to be in the process of establishing a domestic industry in the two newly purchased patents.  Appx396.  The Commission correctly determined that the asserted claims of both patents were invalid and that Roku failed to satisfy the technical prong of the domestic industry requirement for the '875 patent.

For the '875 patent, Roku appeals two issues.  First, Roku appeals the Commission's finding that dependent claim 10 is invalid.  Notably, after the Commission made that finding, the PTAB independently found claim 10 invalid in view of different prior art references than those involved here.[2]  In this appeal, Roku

---

[1] *Roku, Inc. v. Int'l Trade Comm'n*, No. 22-1386, 2024 WL 202033 (Fed. Cir. Jan. 19, 2024).

[2] Roku has filed a separate appeal of the PTAB's decision.  *See Roku, Inc. v. Universal Elecs., Inc.*, No. 2024-1188 (Fed. Cir. 2024).

challenges the Commission's invalidity ruling based on a narrow claim construction that is not supported by the intrinsic or extrinsic evidence—a construction the Commission properly rejected.

Second, Roku appeals the Commission's finding that Roku failed to satisfy the technical prong of the domestic industry requirement. To gain institution of the 1263 Investigation, Roku's Director of Financial Planning and Analysis, Mr. Kevin Bright, submitted a sworn declaration with the complaint stating that Roku "plans to release and sell the [allegedly patent-practicing Gazelle remote] later [in 2021]." Appx462 (¶ 59); Appx10503 (154:22-155:4, 155:20-156:2). Roku also told the Commission in its verified complaint that "Roku employees are and have been actively engaged in implementing features covered by the '875 patent in the new Roku remote control which is currently under development," presumably referencing the period of twenty-two days since Roku had purchased the patents. Appx390 (¶ 159).

The Commission instituted the Investigation, and fact discovery closed on October 8, 2021. Despite Roku's initial assurances that the Gazelle remote was on the way, it has never existed in any form, even as a prototype. And thus it is undisputed there is no prototype, let alone a commercial product, that allegedly practices the '875 patent. The reason is that shortly after the Commission instituted the Investigation, Roku diverted its resources away from the Gazelle to other more

"time-sensitive" projects. Roku's engineers all confirmed that Roku had yet to draft the necessary claim-practicing software and obtain the necessary hardware components for the Gazelle remote. Hence no prototype was created, and the release date was pushed back again and again. At trial, the same Roku officer who told the Commission under oath that the Gazelle's release was imminent could not say under oath when the Gazelle *would ever be released.* Appx148, n.35.

Thus, both at the beginning and at the end, and at all times in between, there has been no evidence in the record of how Roku's hypothetical Gazelle remote would practice the '875 patent. Appx140-141; Appx145-148. The lack of evidence prevented the '875 Intervenors and ultimately the Commission from evaluating whether the Gazelle would ever practice the '875 patent. Accordingly, the Commission properly found that Roku failed to satisfy the technical prong.

For the '511 patent, the Commission determined that claim 5 is invalid as indefinite. Appx7-17. The indefiniteness determination involved a purely legal question, which this Court reviews de novo. *See, e.g.*, *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1373 (Fed. Cir. 2011). That same legal question is at issue in the parties' co-pending district court litigation in the Central District of California, where Roku has asserted the same claim against UEI. *See Roku, Inc. v. Universal Elecs., Inc.*, No. 8:21-cv-00658-JVS-ADS (C.D. Cal. Apr. 8, 2021), Dkt.

1. Thus, the parties' dispute over claim 5 is not moot and should not be vacated. This Court should review and affirm the Commission's determination.

This Court has explained that although resolution of an ITC action does not have preclusive effect on a district court, district courts "are nonetheless bound by stare decisis to abide by any legal precedents established by [this] court." *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1308 (Fed. Cir. 2011); *see also id.* ("the denial of preclusive effect to ITC determinations does not allow district courts . . . to 'ignore holdings of this court that bear on cases before them'" (quoting *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996))). Therefore, the Commission's *legal* determination of indefiniteness is ripe for review, and this Court's ruling will be binding on the district court. The issue is *not* moot, and so this Court should review—and affirm—the legal determination that claim 5 of the '511 patent is invalid for indefiniteness.

## II.    The Commission Found Claim 10 of the '875 Patent Invalid as Both Anticipated and Obvious

### A.    The Alleged Invention of the '875 Patent

The '875 patent relates to a method for programing a universal remote control ("URC") for controlling a variety of electronic devices like TVs and DVD players. Appx272. According to the patent, configuration of a URC required a user to find the "best-matching 'IR code-set' (set of IR codes) for the URC to control" each device. Appx278 (1:12-20). The patent explicitly admits that prior art methods of

configuring a remote control included a method where (i) a user enters a code-set-id, such as a 4 digit numerical sequence, that specifies a code-set of a particular brand and device (e.g., a Sony TV), as well as a method where (ii) a user enters a brand-id (e.g., Sony) instead of a code-set-id, after which a scan through all the code-sets for that brand is performed. *Id*. (1:24-49, 2:7-13). Under the '875 patent, these and other prior art methods were problematic because "the user has to try multiple methods that all work different[ly]" and the "user has to select the correct method to be used, which may be confusing." *Id*. (2:24-27). The '875 patent added that, in the prior art, if one method failed to successfully configure the remote control, the user would have to try one of the other methods. *Id*. (2:21-22, 2:28-30). Attempting to solve these purported problems, the '875 patent says the alleged invention "is to **combine** the 'Brand-id' (as used in the Brand-search method) with the 'Code-set-id' (as used in the 'manual code-set-id selection' method)." Appx278-279 (2:66-3:1) (emphasis added).

### B.     Claim 10 of the '875 Patent

The only claim of the '875 patent on appeal is claim 10—a dependent claim:

> 10. A non-transitory computer-readable medium embodied with a computer program that comprises computer program code executable by a processor to perform the steps of setting up a Remote Control of claim 1.

Appx282. Claim 1 requires, among other things, two limitations that Roku disputed when addressing the question of validity:

– 6 –

> **[(c)]** *scanning, via the processor and memory*, th[r]ough remote control code-sets in a database stored in the memory of the Remote Control, wherein the step of scanning comprises:
>
> **[(c)(1)]** in case that the identifier-entry is a brand-identifier that identifies a brand,
>
>> (i) *iterating, via the processor and memory*, through the remote control code-sets corresponding to the brand and
>> (ii) testing said remote control code-sets by sending, via the transmitter, to a Consumer Electronic device for a given iteration, one or more specific control code functions of a corresponding remote control code-set, …

*Id*. (emphasis added); Appx154-156.  For those two terms, Roku sought to distinguish the prior art by adding a negative limitation that "it is *'only' the software* that 'iterates through all these codesets' *to the exclusion of user input*."  Appx159 (emphasis added).  In this appeal, Roku continues that argument but only as to the "iterating" limitation 1[(c)(1)].  Blue Br. 20.

## C.    The Operation of the Philips Prior Art Remote Controls

During the Investigation, the '875 Intervenors demonstrated that the Philips Prior Art Remote Controls invalidated claim 10.  Appx153-166.  The Philips Prior Art Remote Controls all operate the same in the pertinent respects, and their operation is not in dispute.  *See* Blue Br. 10-11; Appx156-157.  The ID summarized the pertinent operations:

> Respondents explained that "Code Search by Brand" scans through the code-sets in the memory by "Press[ing] the CHANNEL UP button" or by "press[ing] the CHANNEL DOWN button" in an iterative fashion until a code-set successfully changes the channel. In particular, step 5 of the user manual states: "Press the CHANNEL UP button …

– 7 –

repeatedly until the device to be controlled changes channel … If you accidentally overshoot the code required, press the CHANNEL DOWN button to backtrack through the library until the device changes channel. Pressing CHANNEL UP changes direction to forward again." In other words, step 5 describes a "library" of code-sets that are scanned or iterated through in a forward or backward direction until the proper code is found, resulting in a remote control that works properly.

Appx156-157 (internal citations omitted).  This is shown below:



Appx17132 (annotated); Blue Br. 11.

### D.    The Commission Found That the Philips Prior Art Remote Controls Invalidate Claim 10

With respect to the Commission's finding that claim 10 is invalid, Roku raises only a single dispute in this appeal: whether the claim language "iterating, via the processor and memory, through the remote control code-sets corresponding to the brand" in limitation 1[(c)(1)] *excludes* scenarios where a *user* (rather than "*only the software*," as Roku argued) presses a button on the remote to iterate to the next codeset.

In the Philips Prior Art Remote Controls, a user will press the CHANNEL UP or CHANNEL DOWN buttons to iterate sequentially to the next code-set stored in memory (for code search by brand).  Appx156-157; Appx17132.  The Commission determined that Roku's interpretation of limitation 1[(c)(1)], which would prohibit any such user interaction, was overly narrow, has no basis in the claim language, and contradicts the specification.    Appx158-189.    For example, the specification expressly states that a "user" performs the pertinent actions:

> Auto-scan makes it simpler for *a user* to find a code-set that works. Here *the user* presses [certain keys].  Then *he presses a key to start auto-scan*. In some variants *he has to keep a certain button pressed*. The URC starts iterating through all code-sets for the selected device and sends one or more IR-functions in the code-set (often Power-toggle or Power-off) to the equipment. As soon as the CE device reacts (by either turning off, on, or any other response to the IR-code sent), *the user presses a button (or releases a button he was holding)*.

Appx278 (1:52-63) (emphasis added); Appx280 (6:50-54).

Roku admitted that claim 10 covers: (i) pressing a button twice (i.e., "the user presses a button to start the iteration, which then continues until the user presses a button to stop") and (ii) pressing and holding a button (i.e., "the user presses and holds a button, and the iteration continues until the user releases the button."). Blue Br. 8-9; Appx10512 (191:13-192:4); Appx11040; Appx10697 (691:23-693:1). The Commission found "there is no clear disavowal of claim scope that would limit the scanning and iterating steps to require only 'software' iteration to the exclusion of user input." Appx159. Accordingly, the Commission rejected Roku's interpretation of the claims and found claim 10 anticipated.[3] Appx158-159. The Commission also determined that, even if Roku were correct that "iterating…" excludes any user interaction, then claim 10 is obvious. Appx162-164.

## III. The Commission Found That Roku's Hypothetical Domestic Industry Product Does Not Satisfy the Technical Prong

Despite Roku's representations to the Commission that the Gazelle's release date was set for 2021, it is undisputed that Roku has never made an operational prototype of the Gazelle remote, and there was no date certain for its release. Appx10491-10492 (105:15-110:24); Appx11135; Appx135-141. Thus, there was no Gazelle remote for the Commission to analyze under the technical prong. *Id.* Mr.

---

[3] The PTAB also rejected the construction that Roku advances in this appeal. *See Universal Elecs., Inc. v. Roku, Inc.*, No. IPR2022-00818, 2023 WL 6976666, at *7, 15-16 (PTAB Oct. 23, 2023) (adopting a construction that "the claims do not exclude user input during the scanning and iterating.").

Nino Marino, the Gazelle project manager and a Roku corporate witness, put it succinctly when he testified that "[t]he remote doesn't exist yet," and therefore he prepared for his deposition with documents regarding only the Gazelle remote's "*intended* operation." Appx17955 (19:3-9) (emphasis added).

As shown in a demonstrative exhibit (Appx11136), during the Investigation Roku produced only a non-final industrial design—a hollow plastic shell of a remote that included no processor, memory, electronics, or software. Appx10489-10490 (100:21-102:22); Appx12147. The Commission found that Roku's non-final industrial design could not support a domestic industry because it lacks the necessary claim-enabling software and hardware. Appx24-25.

The Commission also found that Roku had not "started to write the necessary source code" to implement the '875 patent.[4] Appx24-25; Appx10491 (108:11-22); Appx10492 (110:16-24); Appx11015; Appx10692 (673:2-23). In this appeal, Roku alleges that 99% of the software that runs on the Falcon and Elk remotes will run on the Gazelle remote. Blue Br. 13. But during the Investigation Roku's Software Program Manager for the Gazelle, Mr. Soh, disputed that 99% of the source code

---

[4] The feature that would allegedly practice the '875 patent is called the "unified TV IR code feature." Appx15294-15297 (JX-0043C); Appx18165-18171 (JX-0480C); Appx10691 (670:11-16). Roku contended that once the Gazelle remote implements the hypothetical unified TV IR code feature, the Gazelle will allegedly practice the '875 patent. Appx10691 (670:11-16).

will be the same, and he estimated that the number would be much lower. Appx25271 (21:16-22). Either way, the missing parts were critical. Roku's witnesses all agreed that the unwritten part of the source code included *all* the code necessary for implementing the claimed functionality of the '875 patent. Appx25276 (26:11-19); Appx25313-25314 (63:7-64:7); Appx19130 (24:12-20); Appx10492 (110:16-112:11); *see* Appx10691 (670:7-10) (none of that source code has been written). Put another way, Roku had not written a single line of code to implement the '875 patent. *Id*. This is undisputed, as Roku's interrogatory responses are unambiguous that "[t]he software and/or firmware specific to the Gazelle remote, and to the features protected by the '875 patent, has not yet been written." Appx21947; Appx11015; Appx10692 (673:2-23); Appx11135; Appx10491-10492 (105:15-106:18, 108:3-22, 110:12-112:11). Thus, Roku never produced *any* source code specific to the Gazelle remote or the functionalities that would allegedly practice the '875 patent. Appx10692 (673:15-23).

### A.    Roku Deliberately Deferred Development of the Gazelle Remote to Work on Other Projects

The primary reason Roku did not have any device that might someday practice the '875 patent is simple: Roku had not written the source code to implement the '875 patent features. As the ID found, Roku intentionally diverted the necessary resources away from the Gazelle remote because other projects were more "time-sensitive" than this litigation-inspired project. Appx138-139; Appx19156-19158

(50:11-51:2, 52:9-17); Appx11011-11012; Appx18094-18095 (158:9-159:4); Appx10692 (671:19-672:8); Appx10723 (795:17-796:18). Moreover, a Roku witness testified that Roku paused work on the unified TV IR code feature during the fact discovery period. Appx11013; Appx19191-19192 (85:22-86:4); Appx10692 (672:9-14); Appx10722 (794:5-21); Appx138. Even more, as of October 6, 2021 (two days before the close of fact discovery), another Roku witness testified that ***Roku had not even approved development*** of the unified TV IR code feature. Appx138-139; Appx11014; Appx25313-25314 (63:7-64:7); *see also* Appx10692 (672:15-673:1).

During the Investigation, Roku pushed the release date back again and again. Appx139; Appx148. The ID found that "[a]s a result, Respondents were deprived of the opportunity to assess whether Gazelle will ever actually meet each and every claim limitation of the '875 patent." Appx139; Appx23. Even Roku did not know how it planned to implement critical claim limitations. *See* Appx11018; Appx18586-18587 (79:15-80:7) (Roku witness admitting he had not even sketched out how he would implement limitation 1[(c)(1)]); Appx10693 (677:9-678:8).

### B.    There Was No Patent-Practicing Product at the Time of the Complaint or at the Close of Fact Discovery

The facts about the lack of development of the Gazelle remote and the hypothetical unified TV IR code feature are undisputed, both at the time of the complaint (April 8, 2021) and at the close of fact discovery (October 8, 2021):

– 13 –

| Status | Complaint | Close of Fact Discovery |
|---|---|---|
| Made, used, sold, or offered for sale a Gazelle remote? | NO | NO |
| Made an operational prototype of the Gazelle remote? | NO | NO |
| Received the processor and memory that Roku planned to use in the Gazelle remote? | NO | NO |
| Made a schematic for the Gazelle remote? | NO | NO |
| Implemented the functionality of the unified TV IR code feature that would allegedly practice the '875 patent? | NO | NO |
| Written source code for the unified TV IR code feature that would allegedly practice the '875 patent? | NO | NO |

Appx140-141; Appx10491-10492 (105:15-110:24); Appx11135.

\*       \*       \*

Roku does not dispute any of the Commission's factual findings on domestic industry. Instead, Roku alleges the Commission committed a legal error when it concluded that Roku's non-existent, hypothetical Gazelle remote did not satisfy the technical prong of the domestic industry requirement. Blue Br. 34-61.

## IV.    The Commission Determined That Claim 5 of the '511 Patent Is Invalid as Indefinite

The Commission determined that claim 5 of the '511 patent is invalid as indefinite. Appx7-17. In so ruling, the Commission recognized that whether a claim satisfies the "definiteness" requirement under 35 U.S.C. § 112 and *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), is a question of law. Appx7.

– 14 –

The Commission made no findings of fact in holding claim 5 indefinite, instead relying only on the intrinsic record—"the text of claim 5, the specification, and the prosecution history of the [']511 patent."  Appx17.  Because the Commission invalidated claim 5 as indefinite, the Commission did not reach any factual questions such as infringement.

The same claim—claim 5 of the '511 patent—is at issue in UEI and Roku's pending dispute in the Central District of California, where Roku continues to assert the claim against UEI.  The district court stayed the case pending resolution of the Commission proceeding underlying this appeal, and did so because the district court case "involves the same issues involved in the proceeding before the Commission," which includes the indefiniteness of claim 5.  28 U.S.C. § 1659.

## SUMMARY OF THE ARGUMENT

Substantial evidence supports each of the disputed findings underlying the Commission's determination that the Intervenors did not violate section 337. This Court should affirm.

First, the Commission correctly found that dependent claim 10 of the '875 patent is invalid as anticipated and obvious. In this appeal, Roku raises a single issue, whether the claim limitation "iterating, via the processor and memory" *excludes* a user repeatedly pressing the same key on the remote control for the "iterating" to occur. It is undisputed that the prior art iterates through code-sets via the processor and memory when a user presses the CHANNEL UP button successively or the CHANNEL DOWN button successively on prior art remotes. Appx156-157.

Both the ALJ and the Commission rejected Roku's attempt to exclude user input, as Roku's view contravened the intrinsic evidence. Appx158-159. For example, the specification expressly discloses examples, such as Figure 5, where a "user" makes multiple key presses on the remote to iterate through codesets. Because it would be improper to exclude user input from the claim scope, the ALJ and Commission found claim 10 anticipated. *Id.*; Appx164. The ALJ and Commission also determined in the alternative that, even accepting Roku's (incorrect) claim construction, claim 10 would have been obvious. Appx159-164.

The only modification needed to invalidate the claim under Roku's construction would be replacing repeated pressing of the CHANNEL UP/DOWN button with pressing and holding a button (which is admitted prior art). Appx159-162; Appx278 (1:50-65). Even Roku's expert admitted that such a modification would have been simple to do and was a known design option. Appx10736-10737 (850:9-851:8).

Second, substantial evidence supports the Commission's finding that Roku failed to satisfy the technical prong of the domestic industry requirement. Roku attempts to create a legal dispute by alleging that the Commission erred by evaluating domestic industry at the time of the complaint rather than, under Roku's view, when the evidentiary record closed. But there was no error. This Court's precedent is clear. For example, in *Motiva* this Court cited and applied its own precedent "holding that the date of filing of a complaint with the Commission was the appropriate date at which to analyze the existence of a domestic industry." *Motiva, LLC v. Int'l Trade Comm'n*, 716 F.3d 596, 601 n.6 (Fed. Cir. 2013). Roku does not dispute that it lacks a domestic industry if this Court applies its own precedent. This Court, however, need not decide the issue because Roku ***at no time*** demonstrated a domestic industry. Moreover, Roku never showed actual "articles protected by the patent" as required by the statute, providing yet another basis for affirming the lack of a domestic industry.

Third, the Commission ruled as a matter of law that claim 5 of the '511 patent is invalid as indefinite. In a three-sentence argument, Roku asks this Court to vacate the Commission's decision not because of the merits but because the '511 patent has expired. The patent's expiration does not render the infiniteness of claim 5 moot. UEI and Roku have a live controversy in the Central District of California involving the same patent claim and the same legal issue. And that dispute over the indefiniteness of claim 5 entails a ***pure question of law*** that this Court reviews de novo. Since the same issue involving the same claim of the same patent in a dispute between the same parties is pending in the Central District of California, and because that issue is a pure question of law, judicial efficiency supports resolving the issue now.

# ARGUMENT

## I.    The Applicable Standards of Review

This Court reviews the Commission's legal determinations without deference and its factual findings for substantial evidence. *See, e.g.*, *Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1348 (Fed. Cir. 2013); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1361 (Fed. Cir. 1999) ("We review factual findings of the Commission under the 'substantial evidence' standard.").

Anticipation is a question of fact, which is reviewed for substantial evidence. *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1066 (Fed. Cir. 2009); *Vizio, Inc. v. ITC*, 605 F.3d 1330, 1342 (Fed. Cir. 2010).

Obviousness is a question of law based on underlying facts. *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1326 (Fed. Cir. 2016). This Court reviews the legal determination de novo and the underlying facts for substantial evidence. *See Arctic Cat*, 876 F.3d at 1358.

"The question whether a complainant has satisfied the domestic industry requirement typically presents issues of both law and fact . . . ." *John Messalingua Assocs. v. Int'l Trade Comm'n*, 660 F.3d 1322, 1327 (Fed. Cir. 2011). This Court applies the substantial evidence standard when reviewing the Commission's factual findings as to domestic industry. *Id.*

## II.    Substantial Evidence Supports the Commission's Finding That Claim 10 of the '875 Patent Is Invalid[5]

As explained by the '875 Intervenors' expert, Dr. Houh, the '875 patent explicitly admits that every limitation of claim 10 was well-known in the prior art. Appx10979; Appx10683 (635:5-636:3); Appx278 (1:11-2:47); Appx23944-23948 (admissions 169-172); Appx23952 (admission 180); Appx23955 (admission 186). Roku's expert, Dr. Balakrishnan, similarly admitted at the hearing that both the brand search and direct code entry methods were well known in the prior art before the '875 patent.    Appx10508 (175:6-25); Appx10572 (316:3-317:3); *see also* Appx10604 (444:14-445:3) (UEI witness Mr. Haughawout dating the methods back to the 1990s and 1980s).    Moreover, the '875 patent acknowledges that known mechanisms to iterate through codesets included: (i) pressing a button to start the iteration, which continued until the user pressed a button to stop the iteration; and (ii) pressing and holding a button, where the iteration continues until the user releases the button.    Appx278 (1:50-65).    Therefore, both experts agreed that the only alleged improvement offered by the '875 patent was combining those two well-known prior art methods (brand search and direct code entry) into a single "configuration mode."    Appx10508 (176:17-21); Appx10981; Appx10683 (636:21-637:3).

---

[5] The '875 patent has not been asserted against Samsung or LG.  Thus, Samsung and LG take no position as to the issues related to the '875 patent.

Dr. Houh explained how four different Philips Prior Art Remote Controls anticipate and render obvious this purported improvement, rendering claim 10 invalid.  Appx11033; Appx10695 (683:16-685:16).  Roku offered only a single validity argument, which not only rested on an unsupported, tortured claim construction, but ignored that claim 10 is invalid even under Roku's narrow construction.  In its principal brief, Roku raises only a single issue about limitation 1[(c)(1)]—whether "iterating, via the processor and memory" "encompass[es] a user's manually pressing a key repeatedly to send codes to the targe device" or whether "iterating" "requires the repetition to be performed by the remote and does not include a user manually pressing a key repeatedly."  Blue Br. 22-23.  The ALJ considered all the evidence, properly rejected Roku's attempt to narrow the claims, and found claim 10 anticipated.  Appx158-159, Appx164.  The ALJ also determined that, alternatively, under Roku's improper construction claim 10 would have been obvious.  Appx159-164.  The Commission reviewed the ALJ's decision in part and adopted the ID's findings, conclusions, and supporting analysis related to invalidity.  Appx2, Appx27.  Substantial evidence supports the Commission's conclusion that claim 10 is invalid.

### A.    The Philips Prior Art Remote Controls Anticipate Claim 10

In addressing the Philips Prior Art Remote Controls, the evidence centered on

the PMDVD6 and its disclosure of limitation 1[(c)(1)].[6]   As discussed above, the

operation of the PMDVD6 is not in dispute, and Roku itself confirms the device's

operation in its principal brief.  *See* Blue Br. 10-11; Appx156-157.  As the ID states:

> [The operation] "Code Search by Brand" scans through the code-sets
> in the memory by "Press[ing] the CHANNEL UP button" or by
> "press[ing] the CHANNEL DOWN button" in an iterative fashion until
> a code-set successfully changes the channel. In particular, step 5 of the
> user manual states: "Press the CHANNEL UP button … repeatedly
> until the device to be controlled changes channel …If you accidentally
> overshoot the code required, press the CHANNEL DOWN button to
> backtrack through the library until the device changes channel. Pressing
> CHANNEL UP changes direction to forward again." In other words,
> step 5 describes a "library" of code-sets that are scanned or iterated
> through in a forward or backward direction until the proper code is
> found, resulting in a remote control that works properly.

Appx154-157 (internal citations omitted).

It is undisputed that the software of the PMDVD6 performs the iteration of

the codesets when the user repeatedly presses the CHANNEL UP and CHANNEL

DOWN buttons because it is the software that finds and transmits codes for the next

---

[6] Roku does not assert or identify any differences among the Philips Prior Art
Remote Controls for purposes of invalidity.   Blue Br. 9.   In the underlying
Investigation, Roku never offered any validity arguments beyond those for the
PMDVD6, and the Commission found that the others—the PM725S, PM435S, and
ZN501S—each invalidate claim 10 for the same reasons as the PMDVD6.
Appx165-166.

codeset.  Appx11132; Appx10754-10755 (922:18-924:8).  It is also undisputed that this functionality uses the remote's processor and memory to iterate through codesets.  When Roku's expert, Dr. Balakrishnan, was cross-examined about a physical exhibit of the PMDVD6 remote, he admitted that pressing the CHANNEL UP button causes the remote to iterate, via the processor and memory, through the remote control code-sets.  Appx10746-10747 (888:14-891:5) (addressing physical exhibit RPX-0119); Appx11034.  For example, he testified:

> Q. And, in fact, every time [the operator of the PMDVD6] pressed a button, the processor had to go to the memory to figure out what the next code-set to test is; is that right?
>
> A. ***The button press would cause the iteration of going to the next code-set that would be sent.***
>
> \*\*\*
>
> Q. So every time [the operator] pressed that button, the ***processor*** was informed of that button press, correct?
>
> A. Yes.
>
> Q. And ***every time [the operator] pressed that button and the processor was informed, the processor went to the memory to retrieve the next code-set***, correct?
>
> A. Sure.
>
> Q. And then the processor caused that next code-set to be transmitted out the IR transmitter; is that correct?
>
> A. As a result of that button press, yes.

Appx10746 (889:25-890:22) (emphasis added).

– 23 –

Dr. Balakrishnan admitted this multiple times during the hearing in various ways:

> JUDGE MCNAMARA: But the software is connected to the pressing of the button, isn't it?
>
> THE WITNESS: It's activated every time I press the button.
>
> JUDGE MCNAMARA: Right.  So it's iterating every time you press the button, it's the software that is actually also going through and searching, isn't it?
>
> THE WITNESS: ***The user is instructing the software go to the next one, go to the next one, go to the next one, and that's the iteration***.

Appx10735 (844:22-845:6) (emphasis added); *see also* Appx10748 (895:7-13) (A: "The software and memory is [sic] involved in processing that button press ***to do the iteration***." (emphasis added)); Appx10733 (838:16-19) ("So what happens there is each time you press and release that channel up button it sends another code for the next code-set in its memory for that particular manufacturer.").

### 1.   Roku's Claim Construction Contradicts the Intrinsic Evidence

Roku has only one argument for claim 10—that the phrase "iterating, via the processor and memory" in limitation 1[(c)(1)] excludes a user repeatedly pressing keys.  Blue Br. 22-23.  Roku does not dispute that claim 10 is anticipated if its claim construction for limitation 1[(c)(1)] is rejected.

This Court should reject Roku's attempt to limit the claims to exemplary embodiments for at least three reasons.  ***First***, nothing in the claim language itself

prohibits user intervention.    Indeed, as the ID correctly found based on Dr. Balakrishnan's own admissions during the hearing, the claim language can be satisfied with user intervention:

> As argued by Roku, "it is the user who presses a key repeatedly, until the device responds to the key press." However, when "the device responds," it does so via its processor and memory. Roku's expert, Dr. Balakrishnan, admitted iteration includes using the processor and memory and "[i]t is not iterating on its own." Furthermore, Dr. Balakrishnan acknowledged that the "software and memory is involved" each time the user presses a key. In addition, a "library" of code-sets is stored in a memory of the code-sets so that iteration occurs when a user repeatedly presses a key…. The user does not enter an identifier entry or code-set with each keypress on the PMDVD6 remote control. This necessarily requires that the memory is accessed, and the iterating is performed via the processor and memory.

Appx158 (internal citations omitted).

Dr. Balakrishnan also admitted that, under his infringement theory, iterating is met when "the respective remote control would send the next code for the next model of device in its memory, ***and then wait for the user to say is it okay or not or go on to the next one*** after a particular number of seconds would pass."  Appx10734 (839:1-11) (emphasis added).  Further, Dr. Balakrishnan admitted that, under his infringement theory, iterating occurs because of a user continuing to keep a button pressed down, i.e., pressing and holding a button.  Appx10512 (191:13-192:4); Appx11040; Appx10697 (691:23-693:1).  Thus, Roku admits that claim 10 encompasses actions where (i) "the user presses a button to start the iteration, which then continues until the user presses a button to stop" (i.e., pressing a button twice),

– 25 –

and where (ii) "the user presses and holds a button, and the iteration continues until the user releases the button" (i.e., pressing and holding a button). Blue Br. 8-9. No intrinsic evidence supports any distinction between a user (i) pressing a button twice (once to start the iteration and once to stop), (ii) pressing and holding a button, and (iii) a user repeatedly pressing a button. Appx10755 (923:9-924:25).

*Second*, the written description and figures for the '875 patent expressly disclose a "user" using multiple key presses to iterate through codesets. For example, steps 6 through 11 of Figure 5 show how a user can "ITERATE THROUGH ALL CODE-SETS":

> In step 8 it is checked if there is a user reaction. . . . If the user reacted, he is (optionally) offered to try the buttons of the URC [universal remote control] for the selected code-set (step 9).

> In step 10 the user indicates if he accepts the current remote control code-set or not. If the user accepts, then the algorithm stops . . . . If the user doesn't accept, the scanning process is continued by going to step 11.

Appx280 (5:21-22, 6:37-54); Appx275; Appx11041; Appx10697 (693:2-18). The user-implemented iteration loop ends with step 11 querying, "ITERATION THROUGH ALL CODE-SETS FINISHED?" Appx275.



FIG. 5

*Id.*

Steps 8, 9, and 10 therefore disclose a user pressing multiple keys to continue the iteration process. *Id.* Roku even admits that "the loop between steps 6 and 11 illustrates the testing of codes using the brand-search method," and yet Roku inexplicably ignores steps 8, 9, and 10 (which involve a user pressing a button) for no apparent reason other than that those steps expressly contradict Roku's claim interpretation. Blue Br. 8.

The '875 patent did not define "iterate" in a way that excludes user input by implication, as Roku alleges. Blue Br. 25-26. The specification expressly discloses a preferred embodiment where a user presses keys multiple times when iterating through codesets: user reaction (step 8), trying URC buttons (step 9), and accepting the code-set or not (step 10). Appx11041; Appx10697 (693:2-18); *EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1347 (Fed. Cir. 2014) (a "claim construction that excludes a preferred embodiment … is rarely, if ever correct" (alteration in original)).

As alleged support for its narrow claim construction, Roku points to the specification's use of "iterate" when describing the example embodiments of Figures 5 and 6. Blue Br. 24-25 (discussing '875 patent at 6:31-33, 6:35-37, 6:63-64, 7:63-67). Figure 5 expressly discloses user input, as described above. Even so, the specification makes clear that the examples, including those in Figures 5 and 6, are merely "preferred method[s]." Appx280 (5:21-24). Roku next identifies passages that relate only to the prior art. Blue Br. 24-25 (discussing Appx278 (2:10-13, 1:56-60)). Roku also identifies another example in the '875 patent (Blue Br. 25, citing Appx279 (3:61-64)), but the patent is again clear this is a "preferred embodiment." Appx279 (3:56-65). Moreover, the patent describes that pressing and holding a button or pressing a button twice are optional embodiments of the iterating step. Appx280 (6:28-30) ("The user starts the 'scanning' process (step 4). They ***may*** be

– 28 –

implemented by pressing a button on the URC or by pressing & holding a button."
(emphasis added)).

Roku's proposal would commit one of the "cardinal sins" of patent law by importing limitations into the claims based on exemplary embodiments in the specification. *Philips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005); *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019). Even if the specification disclosed only iterating without user intervention (which is incorrect), it would still be legally improper to limit the claims to those embodiments as Roku seeks to do. *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004))). And to be sure, the statements in the specification identified by Roku fail to rise to the level of "clear and unmistakable" evidence required to show that the patentee acted as his own lexicographer or disclaimed user interaction. *Thorner*, 669 F.3d at 1365-67; *Cont'l Circuits*, 915 F.3d at 797 (holding that even disclosing only a single embodiment does not limit the meaning of a claim term to that embodiment); Appx10755 (924:9-25).

***Third***, the Commission's rejection of Roku's construction is consistent with the construction of the "testing" step, for which no party petitioned for review. *See* Appx158-159. During claim construction, the step of "(ii) testing said remote control…" was construed to not ***require*** user intervention. *Id.*; Appx262-264. Likewise, claim 1 also "does not ***exclude*** user intervention." Appx158-159 (emphasis added). This is confirmed by dependent claims 2-4, 6, 11, and 13, which explicitly require user approval, user reactions, and user feedback. Appx282. *See, e.g.*, *Phillips*, 415 F.3d at 1314 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."); *Liebel-Flarsheim*, 358 F.3d at 910 ("In such a setting, where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest.").

Accordingly, the Commission properly rejected Roku's narrow claim construction, as it not only lacks any support in the intrinsic record, but also directly contradicts the express teachings of the '875 patent. Roku cannot rely solely on extrinsic evidence (Dr. Balakrishnan's opinion and a dictionary definition) to contradict unambiguous intrinsic evidence. Blue Br. 26-27; *see Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC*, 824 F.3d 999, 1003 (Fed. Cir. 2016) ("Legal error arises when a court relies on extrinsic evidence that contradicts the intrinsic record"); *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379,

1382 (Fed. Cir. 2008) ("A court may look to extrinsic evidence so long as the extrinsic evidence does not contradict the meaning otherwise apparent from the intrinsic record."). Roku's extrinsic evidence does not support its construction in any event. For example, Roku's dictionary definition that "iteration" is "the repetition of a function or process in a computer program" does not preclude user input. Blue Br. 26. The Commission properly rejected Roku's extrinsic evidence.

## 2.    The PTAB Explicitly Rejected Roku's Construction

After the Commission found claim 10 invalid, the PTAB independently reached the same conclusion. *Universal Elecs., Inc. v. Roku, Inc.*, No. IPR2022-00818, 2023 WL 6976666 (PTAB Oct. 23, 2023). Roku has appealed that decision to this Court. *See Roku, Inc. v. Universal Elecs., Inc.*, No. 24-1188 (Fed. Cir.).

As pertinent here, during the IPR Roku "acquiesce[d] to a construction in which the claims do not exclude user input during the scanning and iterating." *Universal Elecs., Inc. v. Roku, Inc.*, No. IPR2022-00818, 2023 WL 6976666, at *7 (PTAB Oct. 23, 2023). The PTAB adopted a construction that "the claims do not exclude user input during the scanning and iterating." *Id*. at *15-16. The PTAB's construction, and the PTAB's independent finding of invalidity under that construction, further undercut Roku's arguments in this appeal.

## B.    Claim 10 Is Obvious Under Roku's Claim Construction

The Commission determined in the alternative that even if Roku's construction were accepted, claim 10 is invalid as obvious.  Appx159-162.  The Commission's alternative ruling provides another basis for this Court to affirm the invalidity of claim 10.

Even under Roku's theory that a user pressing keys does not satisfy limitation 1[(c)(1)], it is undisputed that pressing and holding a button falls within the scope of the claims.  Appx10512 (191:13-192:4) (Dr. Balakrishnan's discussing his press-and-hold infringement theory).  As UEI's expert Dr. Houh explained, it would have been obvious to a POSITA to replace the functionality of a user pressing the same key multiple times with the functionality of a user pressing and holding that key because a POSITA would have been motivated to make setup easier for the user by requiring fewer key presses (to help avoid repetitive stress injury, for example).  Appx10699-10700 (702:15-703:17); Appx10755 (925:1-22).  Dr. Balakrishnan made no attempt to address the motivation Dr. Houh offered, and Dr. Balakrishnan even agreed that the modification would have been simple to do and was a known design option.  Appx10736-10737 (850:9-851:8) (Dr. Balakrishnan: "I don't think I'm disputing that in order to write the code to make the change would be particularly complicated.  That's not the dispute."  And: "It's not the implementation that's the issue that's hard necessarily"); Appx10748 (895:21-896:5).  Pressing and holding a

button to iterate through codesets was well known in the prior art, as admitted by the

'875 patent.  Appx278 (1:11-2:47); Appx11040; Appx10697 (691:22-693:1).

Roku's principal brief raises three issues with the Commission's obviousness

conclusion: lack of motivation to modify, lack of a reasonable expectation of

success, and hindsight bias.  Blue Br. 28-33.  As explained below, none of Roku's

arguments has merit.

### 1. Substantial Evidence Supports the Motivation to Modify the Philips Prior Art Remote Controls

Roku did not seek Commission review of the ID's finding "that there would

have been a motivation to modify the Philips Prior Art Remote Controls to use a

press-and-hold rather than having the user press a button repeatedly to step through

the code-sets."  Blue Br. 28-29; Appx10364-10365.  In fact, Roku did not seek

Commission review of any of the arguments contained in section I.B.1 of its

principal brief.  *See* Blue Br. 28-31.  Thus, these arguments are forfeited.  *Philip*

*Morris Prods. S.A. v. ITC*, 63 F.4th 1328, 1336 (Fed. Cir. 2023) ("a party's failure

to make a specific argument in its petition for review of the FID before the

Commission constitutes forfeiture"); *see also* 19 C.F.R. § 210.43(b)(3)-(4).

Nevertheless, the '875 Intervenors demonstrated it would have been obvious

to a POSITA to replace functionality where a user presses a key multiple times with

the functionality of a press-and-hold, because a POSITA would have been motivated

to make setup easier for the user by requiring fewer key presses and helping avoid

repetitive stress injury.  Appx10699-10700 (702:15-703:17).  For example, Dr. Houh explained that using a press-and-hold would be easier for a user because otherwise a user could have to press a button "a hundred times or more."  Appx10755 (925:1-20).  Roku's expert also acknowledged that it is easy to write the software code to make the change for keeping a key pressed throughout the iterations.  Appx10736-10737 (850:9-851:8).  The ID thus correctly found "there was no dispute that the modification for continual pressing of the key is known and within the level of skill of one of ordinary skill in the art."  Appx160.  The ID thus also correctly found that a POSITA would have been motivated to make the modification to make the remote control easier to setup.  *Id*.

### 2.    The Commission Correctly Found a Reasonable Expectation of Success

The record is replete with evidence establishing a reasonable expectation of success for the proposed modification.  "*KSR does not require an explicit statement of a reasonable expectation of success in every case.*"  *See Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 836 (Fed Cir. 2015).  Here, Dr. Houh testified expressly that modifying the Philips Prior Art Remote Controls would have worked and would not have been difficult to implement:

> Q. Would making that modification to the PMDVD6 have been difficult for a POSITA?
>
> A. No, it really would ***just be a software change, no hardware required, and it's what developers do, they can do these kinds of***

***things, you know, all the prior art does it that way,*** and it wouldn't have required any undue experimentation.

Appx10700 (703:5-11) (emphasis added). Further, Roku's expert admitted that simple software processing changes are within the knowledge of skilled artisans. Appx10736-10737 (850:9-851:8) (Dr. Balakrishnan: "I don't think I'm disputing that in order to write the code to make the change would be particularly complicated. That's not the dispute." And: "It's not the implementation that's the issue that's hard necessarily").

Based on the evidence presented, the ID found that "Roku's own expert acknowledged that it is easy to write the software code to make the change for keeping a key pressed through iteration." Appx160. The ID also found "[t]here is no dispute that the modification for continual pressing of the key is known and within the level of skill of one of ordinary skill in the art." *Id*. Thus, substantial evidence supports the finding that a POSITA would have had a reasonable expectation of success in making this simple software change.

### 3.    The Modification Does Not Rely on Hindsight

Roku argues that making the remote easier to use and replacing the functionality of a user pressing a key multiple times with the functionality of a press-and-hold is improper hindsight bias. Blue Br. 32-33. But the ID correctly found otherwise:

The '875 patent, as a whole, is directed to software programming to make the remote easier to use, that is, combing through all the possible code-sets and brand-identifiers to successfully program a remote. ***The object of the invention is not to limit the number of keystrokes while the software is scanning to make the remote control easier to program***. ***Hindsight bias would be present if the patent guided one to reduce the number of keystrokes to make the remote control easier to use***, or if the patent stated combining code-sets and brand-identifiers is enabled or made easier by changing the number or style of pressing the keys.

Appx161 (emphasis added).    Further, the proposed modification is within the

knowledge of a POSITA and would involve a simple software change.  Appx10699-

10700 (702:15-703:17).    The Commission's finding is well supported and fully

refutes Roku's appellate argument.

## III.    Substantial Evidence Supports the Commission's Finding That Roku Failed to Satisfy the Technical Prong

The Commission correctly found that a domestic industry did not exist at the

time of the complaint.  Appx21-22.  The Commission also correctly found that a

domestic industry was not in the process of being established at the time of the

complaint.  Appx22-25.  Roku has not appealed the factual findings underlying

either decision.  Instead, Roku attempts to manufacture a legal dispute.  Roku argues

that the Commission erred by evaluating the question of a domestic industry at the

time of the complaint rather than, under Roku's view of the law, when the

evidentiary record closed.  Blue Br. 34.  As explained below, this Court's precedent

is clear that a domestic industry is evaluated at the time of the complaint.  *See* Section

III.A, *infra*.   But this Court need not resolve Roku's question because the Commission's determination can be affirmed under either view—whether at the time of the complaint or at the close of the evidence—since Roku ***at no time*** demonstrated a domestic industry.   *See* Section III.B, *infra*.   Moreover, Roku never showed any actual "articles protected by the patent" as required by 19 U.S.C. § 1337(a)(2), which provides an alternative basis for affirming the Commission's finding.   *See* Section III.C, *infra*.

### A.   The Commission Correctly Evaluated Domestic Industry at the Time of the Complaint

The Commission correctly evaluated Roku's alleged domestic industry at the time of the complaint.   This Court has been clear that the "relevant date at which to determine if the domestic industry requirement of Section 337 was satisfied" is "the date of the filing of [the] complaint."   *Motiva*, 716 F.3d at 601 n.6; *see also Certain Video Game Systems and Controllers*, Inv. No. 337-TA-743, Comm'n Op., 2012 WL 13171643, at *3 (Jan. 20, 2012) ("[A]s a general matter, the only activities that are relevant to the determination of whether a domestic industry exists or is in the process of being established are those that occurred before the complaint was filed."), *aff'd sub nom. Motiva*, 716 F.3d 596; *Bally/Midway Mfg. v. U.S. Int'l Trade Comm'n*, 714 F.2d 1117, 1121 (Fed. Cir. 1983) (holding that the date of filing of a complaint with the Commission was the appropriate date for analyzing the existence of a domestic industry).

In *Bally*, this Court reversed the Commission's determination on domestic industry because it was based on evidence at the time of the Commission's opinion, not the filing of the complaint. *Bally*, 714 F.2d at 1121-23. This Court concluded that "the proper date for determining whether [the domestic industry article] constituted an 'industry' entitled to protection under section 337 was the date on which the complaint was filed rather than the date on which the Commission rendered its decision." *Id*. at 1121. As this Court explained, evaluating domestic industry **after** filing the complaint would produce "anomalous results" because "infringing importers whose unfair practices were most effective, i.e., those who succeeded in destroying their American competition, would be treated more favorably than those whose unfair practices were less successful." *Id*.

Similarly, in *Motiva* this Court affirmed "the Commission's use of the date of the filing of Motiva's complaint in this case as the relevant date at which to determine if the domestic industry requirement of Section 337 was satisfied." *Motiva*, 716 F.3d at 601 n.6. That time frame applies to both an existing domestic industry and a domestic industry in the process of being established. *Id*.

Just last year, this Court reaffirmed that the filing date of the complaint is the relevant date for determining whether the domestic industry requirement is satisfied. *Philip Morris*, 63 F.4th at 1341 n.4 ("the filing date of the complaint is the 'relevant date at which to determine if the domestic industry requirement' is satisfied"

– 38 –

(quoting *Motiva*, 716 F.3d at 601 n.6).[7]  Thus, the Commission correctly applied this Court's binding precedent when finding that Roku lacked a domestic industry at the time of the complaint.

In appropriate situations, the Commission has at times considered activities and investments beyond the filing of the complaint.  But the Commission only "considers post-complaint evidence regarding domestic industry in very specific circumstances, i.e., 'when a significant and unusual development has occurred after the complaint has been filed.'"  *Certain Collapsible Sockets for Mobile Electronic Devices and Components Thereof*, Inv. No. 337-TA-1056, Comm'n Op., 2018 WL 7680630, at *9 n.10 (July 9, 2018).  That exception does not apply here.  As the Commission found, Roku made no such argument, much less provided any evidence: "Roku made no argument, nor did it offer any evidence at the hearing, that there was 'a significant and unusual development after the complaint has been filed' so as to justify the ALJ's consideration of post-complaint evidence to support its domestic industry claim."  Appx21.

Roku's principal brief does not argue otherwise, nor could it.  First, there were no significant developments after the filing of the complaint.  As discussed above, at the close of fact discovery "Roku not only lacked an article, but also much of the

---

[7] Given this Court's precedent, Roku's appeal does not turn on *Chevron* deference. Blue Br. 46-57.

fundamental hardware and all of the software components that would practice [the '875 patent]." Appx141. The same was true of as of the filing of the complaint. Appx140; Appx24-25.

Second, to try to explain away the lack of any developments, Roku's own expert admitted there were no unusual developments, and that Roku instead was following its "normal process":

> Well, there was nothing inconsistent with that fact and my opinion here. As I understand it, based on the work that I've done, ***Roku is following its normal process for developing*** Gazelle and there's a certain sequence to the R&D and development steps that need to be undertaken in a particular sequence.
>
> And so I didn't find that surprising, and it seems consistent with the current plan to meet the targeted release date.

Appx10591 (392:10-18) (emphasis added); *see also* Blue Br. 15 ("Roku continued its ***normal development process***." (emphasis added)); Blue Br. 60 (quoting this expert testimony). Accordingly, the Commission properly evaluated domestic industry at the time of the complaint because there were no significant or unusual developments.

\*     \*     \*

As shown above, this Court's precedent is not ambiguous. But even if it were, the Commission's practice of evaluating domestic industry at the time of the complaint is consistent with the statutory text, the legislative history, and Commission precedent. Each of these is addressed below.

### 1.     The Statutory Text Confirms Domestic Industry Is Evaluated at the Time of the Complaint

The statutory text confirms this Court's precedent that domestic industry is evaluated at the time of the complaint.  Section 337(a) bars importation of products that infringe a valid and enforceable patent "only if an industry in the United States, relating to the articles protected by the patent, copyright, trademark, mask work, or design concerned, ***exists or is in the process of being established***."  19 U.S.C. § 1337(a)(2) (emphasis added).  Section 337(b)(1) requires the Commission to "investigate any alleged violation of this section on complaint under oath or upon its initiative."  19 U.S.C. § 1337(b)(1).  Thus, section 337 instructs the Commission to investigate alleged violations based on allegations sworn under oath in the complaint.  This includes the sworn statements in a complaint that a domestic industry exists or is in the process of being established.

Consistent with this interpretation, this Court has stated that "[w]hen a notice of investigation issues, … the Commission must have already ensured that the complaint sufficiently pleaded a statutory violation."  *Laerdal Med. Corp. v. Int'l Trade Comm'n*, 910 F.3d 1207, 1213 (Fed. Cir. 2018).  To ensure that a complaint was sufficiently pleaded, the Commission must evaluate domestic industry at the time of the complaint—either an existing domestic industry or one in the process of being established.  *See also* 19 C.F.R. § 210.9(a) ("Upon receipt of a complaint

alleging violation of section 337 … [t]he Commission shall examine the complaint for sufficiency and compliance with the applicable sections of this chapter.").

Roku argues that the phrase "is in the process of being established" is written in the present tense. Blue Br. 35-37. But Roku fails to explain how that compels evaluating the domestic industry at the close of the evidentiary record rather than some other time, whether the time of the complaint, the close of fact discovery, the date of the ID, the date of the Commission's opinion, or some other date.

Roku also argues that "read[ing] the language otherwise would blur the distinction between an 'existing' domestic industry and one 'in the process of being established.'" Blue Br. 36. Not so. An existing domestic industry and a domestic industry in the process of being established are two different things, each with their own tests and requirements. Roku also ignores that section 337 has other requirements such as infringement, importation, and standing, all of which are described in the present tense. Roku does not contend that the Commission can or should institute an investigation based on future products or products that have yet to be imported.

Roku also argues that equitable claims can be shown using events after the date of the complaint. Blue Br. 39-40. Even if true, it does not apply here because the remedy available from the Commission is statutory, not equitable. *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1359 (Fed. Cir. 2010) ("Unlike the

equitable concerns at issue in *eBay*, the Commission's issuance of an exclusion order is based on the statutory criteria set forth in Section 337." (discussing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006))). Moreover, at the Commission, questions of violation and remedy are separate inquiries. *Bally*, 714 F.2d at 1123 ("Congress did not intend the Commission to consider questions of remedy when the agency determines whether there is a violation").

### 2.    The Legislative History Confirms Domestic Industry Is Evaluated at the Time of the Complaint

In 1988, Congress changed the requirements for domestic industry and allowed complainants to rely on a domestic industry in the process of being established. S. Rep. No. 100-71, at 129 (1987); H.R Rep. No. 100-40, at 156-57 (1987). Congress wrote: "The mere ownership of a patent … would not be sufficient to satisfy this test. The owner of the property right must be actively engaged in steps leading to the exploitation of the intellectual property, including application engineering, design work, or other such activities." S. Rep. No. 100-71, at 130. Further, the legislative history states:

> ***[I]f a new product is developed in the United States and is protected by a U.S. intellectual property right***, the owner of the intellectual property right ***would not have to wait to bring an action*** under section 337 until he can satisfy the definition of industry, ***if he can demonstrate that he is taking the necessary tangible steps to establish such an industry in the United States.***
>
> \*\*\*

> The Commission should determine whether the steps being taken indicate a significant likelihood that the industry requirement will be satisfied in the future.

S. Rep. No. 100-71, at 129-30 (emphasis added); H.R. Rep. No. 100-40, at 157.  In short, Congress envisioned that complainants would use "in the process of establishing a domestic industry" when they *already* had a new product protected by a U.S. patent and were trying to establish an industry even though it was not established yet.  *Id.*

Congress did not intend the "in the process of being established" language to be stretched to cover a complainant who, like Roku here, purchased a patent twenty-two days before filing the complaint with a mere theoretical plan for a hypothetical domestic industry product.  Congress was clear that "the Committee does not want to see [the 'in the process of being established'] language used as a loophole to the [domestic] industry requirement."  S. Rep. No. 100-71, at 130.

### 3.    Commission Precedent Confirms That Domestic Industry Is Evaluated at the Time of the Complaint

Roku argues that the Commission has been inconsistent, both in analyzing domestic industry at the time of the complaint and in determining whether there has been a significant and unusual development justifying considering post-complaint evidence.  Blue Br. 51-56.  But Roku's cases all occurred before this Court's decision in *Motiva*, where this Court left no room for confusion: "We also affirm the Commission's use of the date of the filing of Motiva's complaint in this case as the

relevant date at which to determine if the domestic industry requirement of Section 337 was satisfied." *Motiva*, 716 F.3d at 601 n.6 (citing *Bally*, 714 F.2d at 1120); *see also Philip Morris*, 63 F.4th at 1341 n.4 (quoting *Motiva*). Thus, Roku's pre-*Motiva* Commission cases are inapplicable.

Since this Court's decision in *Motiva*, the Commission has consistently ruled that domestic industry is evaluated at the time of the complaint. *See, e.g.*, *Certain Collapsible*, 2018 WL 7680630, at *9 n.10; *Certain Television Sets, Television Receivers, Television Tuners, and Components Thereof*, Inv. No. 337-TA-910, Comm'n Op., 2015 WL 6755093, at *32 (Oct. 30, 2015); *Certain Thermoplastic-Encapsulated Elec. Motors, Components Thereof, and Products and Vehicles Containing Same II*, Inv. No. 337-TA-1073, Comm'n Op., 2019 WL 9596564, at *4 (Aug. 12, 2019). Moreover, since *Motiva* the Commission has consistently considered post-complaint evidence of a domestic industry only when a significant and unusual development occurred after the complaint was filed. *See, e.g.*, *Certain Collapsible Sockets*, 2018 WL 7680630, at *9 n.10; *Certain Thermoplastic Encapsulated Elec. Motors*, 2019 WL 9596564, at *4.

**B.    Roku Failed to Show a Domestic Industry Was "In the Process of Being Established," Both at the Time of the Complaint and at the Close of Fact Discovery**

Although Roku insists that domestic industry should be evaluated at the close of the evidentiary record, Blue Br. 18, Roku ignores that the ID determined that

Roku failed to show domestic industry ***both*** at the time of the complaint ***and*** at the

close of fact discovery.  Appx145-148.  If this Court determines that post-complaint

evidence should be considered, this Court should still affirm because, based on the

underlying record, the outcome is the same.  Roku failed to meet its burden.

Appx145-148.

To establish an industry "relating to the articles protected by the patent" is "in

the process of being established" Roku had the burden to show "the necessary

tangible steps to establish such an industry" and to show there is a "significant

likelihood that the industry requirement will be satisfied in the future."  *Certain*

*Stringed Musical Instruments and Components Thereof*, Inv. No. 337-TA-586,

Comm'n Op., 2008 WL 2139143, at *8 (May 16, 2008).  The ID determined that

Roku failed both requirements—both at the time of the complaint and at the close of

fact discovery.  Appx145-148.

### 1.    Roku Did Not Take the Necessary Tangible Steps to Show a Domestic Industry "in the Process of Being Established"

The test for "in the process of establishing" a domestic industry required Roku

to have taken the "***the necessary*** tangible steps," not merely "some necessary

tangible steps."  *Id.*; Appx146.  It is undisputed that both at the filing of the complaint

and at the close of fact discovery, Roku still had many necessary tangible steps to

take.  Appx145.  The missing steps were not merely for the commercialization of an

existing prototype. *Id.* Instead, Roku still had many fundamental development steps to take. *Id.* As shown below, there were many necessary tangible steps that Roku had not completed or even started, most notably "[s]ource code development on Unified TV IR Code Configuration feature for Gazelle." *Id.*



Appx146.

The ID also found that "in the context of the '875 patent, the necessary tangible steps require development of hardware and software; neither of which Roku has created." Appx146. For example, the ID concluded that Roku had not taken the necessary tangible steps for the processor, memory, and transmitter limitations of the '875 patent because Roku had not shown that the Gazelle remote would practice those limitations. Appx146-147.

### 2. Roku Did Not Show a Significant Likelihood That a Domestic Industry Will Exist in Future

The ID found that Roku failed to show a significant likelihood that a domestic industry will exist in the future. Appx147-148. The ID stated that "Roku's demonstrated behavior of promising a product, and breaking that promise, undermines Roku's latest promise that it will release the Gazelle product in October of 2022." Appx147. The ALJ described an example of Roku's broken promise: "In order to gain institution of this Investigation based solely on a domestic industry in the process of, Roku's Director of Financial Planning and Analysis, Mr. Kevin Bright, submitted a sworn declaration with the Complaint that stated Roku 'plans to release and sell the [Gazelle remote] later [in 2021].'" Appx147-148 (alterations in original). But after filing the complaint, "Roku turned its efforts to other products, causing the release date to slide from 2021 to late 2022." *Id*. "This pattern of promising a release date under oath, then allowing other products take priority, suggests Roku has not prioritized the Gazelle and it still is uncertain that the remote will ever exist, let alone by October 2022." *Id*. Moreover, that same Roku officer, Mr. Bright, later told the Commission he cannot say under oath when the Gazelle will *ever* be released. Appx148, n.35.

### C. Roku Failed to Show Actual "Articles Protected by the Patent"

This Court need not resolve the dispute addressed above regarding the time frame for evaluating a domestic industry because, regardless, Roku never

demonstrated any "actual 'articles protected by the [']875] patent" as required by section 337. *Microsoft Corp. v. Int'l Trade Comm'n*, 731 F.3d 1354, 1361-62 (Fed. Cir. 2013) (quoting 19 U.S.C. §§ 1337(a)(2), (a)(3)); Appx141-144 (ruling that "Roku failed to show 'articles protected by the patent'" (capitalization omitted)). This Court can therefore affirm the Commission's finding for this separate reason.

Section 337 grants the Commission authority to remedy the unfair importation of "articles" into the United States when that importation infringes a patent or other intellectual property right. 19 U.S.C. § 1337(a)(1). The Commission's authority is subject to an important caveat: "[A] company seeking section 337 protection must … provide evidence … relat[ing] to an actual article that practices the patent." *Microsoft*, 731 F.3d at 1362. It is not enough that a ***hypothetical*** article embodies the patent; "[s]ection 337 … unmistakably requires that the domestic company's substantial investments relate to ***actual*** 'articles protected by the patent.'" *Id.* at 1361-62 (quoting section 337) (emphasis added); *see also id.* at 1364 (the question is whether the patented invention was "actually implemented"); *Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240, 250 (Fed. Cir. 2022) (similar).

In the Investigation, the ALJ correctly recognized that a domestic industry "in the process of" being established "requires a physical manifestation of an article that practices the patent at issue." Appx142. While the Commission agreed "Roku failed to meet its burden to show" an "in the process of" domestic industry, the

Commission disagreed with the ID's view that the law requires an actual article protected by the patent.  Appx24 (not adopting the ID's determination "that a currently existing physical article must exist").  This Court reviews that legal determination de novo, and in doing so this Court should reverse the Commission's view of the law, thus providing another basis for affirming the Commission's ultimate (correct) finding—that Roku failed to prove a domestic industry.

The Commission's determination that a domestic industry "in the process of" being established does not require a physical article contradicts the statute and this Court's precedent.  The statute says, twice, there must be "articles protected by the patent." 19 U.S.C. §§ 1337(a)(2), (a)(3).  For example, 19 U.S.C. § 1337(a)(2) states:

> Subparagraphs (B), (C), (D), and (E) of paragraph (1) apply only if an industry in the United States, relating to *the articles protected by the patent*, copyright, trademark, mask work, or design concerned, exists or is in the process of being established.

(Emphasis added.)  The statute thus requires both an industry that "exists or is in the process of being established," and that the industry relates to "articles protected by the patent."  As described above, this Court has held that section 337 requires "*actual*" articles protected by the patent:

> Section 337, though not requiring that an article protected by the patent be produced in the United States, *unmistakably requires* that the domestic company's substantial investments relate to *actual "articles protected by the patent."* 19 U.S.C. §§ 1337(a)(2), (3). A company seeking section 337 protection must therefore provide evidence that its substantial domestic investment—e.g., in research and development—

> relates to ***an actual article that practices the patent***, regardless of whether or not that article is manufactured domestically or abroad.

*Microsoft*, 731 F.3d at 1361-62 (emphasis added). There is no basis in the statute for treating "articles protected by the patent" differently for an existing domestic industry versus a domestic industry in the process of being established.

The Commission's interpretation that "in the process of" does not require an actual article protected by the patent conflicts with this Court's precedent. *See id.*; *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1306-07 (Fed. Cir. 2010) (domestic industry requires "the industry [to] produce[] articles covered by the asserted claims"); *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1359 (Fed. Cir. 2007) (there must be a "domestic product" to satisfy the domestic industry requirement); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1375 (Fed. Cir. 2003) (considering whether the "industry relates to the protected articles").

Applied here, Roku was required to show it had an actual article that practiced the '875 patent. *Microsoft*, 731 F.3d at 1361. In the context of claim 10, Roku was required to have an actual article that satisfies the claim requirements—meaning an actual product with the required keyboard, processor, memory, transmitter, and non-transitory computer-readable medium embodied with a computer program that comprises computer program code executable by a processor to perform the steps of setting up a Remote Control of claim 1. Appx282 (claims 1 and 10). During the Investigation, Roku admitted not having such a device. Appx24058 (admission

– 51 –

398); Appx24061 (admission 403); Appx24062 (admission 405); Appx24096 (admission 443); Appx10491 (108:19-22); Appx10492 (110:12-112:11). Moreover, as the ALJ found, "[a]t the close of fact discovery (October 8, 2021), it is undisputed that Roku not only lacked an article, but also much of the fundamental hardware and all the software components necessary to practice [the '875 patent]." Appx141. Roku thus failed to demonstrate any "articles protected by the patent" as required by section 337.

Moreover, the Commission itself was clear that Roku failed to meet its burden to show that the Gazelle remote would ever practice the '875 patent, due to Roku's lack of evidence. The Commission found:

> ***Roku failed to produce, and the record lacks, sufficient evidence of how Roku's alleged domestic industry device (Gazelle) will operate so as to allow the parties to probe in discovery, and the Commission to make a determination, as to whether Gazelle will practice the '875 patent***. As a result, and as the ID found, "the 875 Respondents have not had an opportunity to assess whether Gazelle will ever actually meet each and every claim limitation of one or more claims of the '875 patent." [Appx139]. The ID further found that ***"[t]his is not about significant likelihood, but rather, substantial proof with respect to the technical prong***. The '875 Respondents have had no opportunity to evaluate in fact or expert discovery whether Roku's future promised product actually would practice the claims of the '875 patent." [Appx142]. ***Roku does not rebut these findings***. *See* Roku Pet. of ID on Violation at 22-46. ***We agree with the ID that complainant must provide sufficient information to allow an assessment of whether the technical prong is met with respect to a domestic industry in the process of being established***.

Appx23 (emphasis added).

Because the statute and this Court's precedent require "articles protected by the ['875] patent," and because there is no dispute Roku failed to produce such an article (or any evidence of such an article), this Court should affirm the Commission's determination of no violation.

### D.     The ALJ Properly Excluded Roku's Untimely Evidence

Finally, Roku alleges that the ALJ's exclusion of untimely evidence constitutes prejudicial error.  Blue Br. 61; Appx221-233.  This Court reviews such procedural and evidentiary determinations, including rulings limiting testimony, for an abuse of discretion.  *See Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1370 (Fed. Cir. 2001); *NEC Corp. v. United States*, 151 F.3d 1361, 1375 (Fed. Cir. 1998).  That standard is not met here; indeed, the ALJ properly and correctly excluded Roku's evidence.

#### 1.     Background

As described above, the state of the development of the Gazelle at the time of the complaint and at the close of fact discovery is undisputed.  Appx140-141.  In the context of the '875 patent, Roku had not performed the necessary and tangible steps such as the development of the necessary hardware and software.  Appx145-148.

Realizing its dilemma upon the imminent approach of the hearing, Roku sought to admit multiple categories of evidence related to the Gazelle that were never produced during fact discovery.  Even worse, Roku stated it intended to have its

witnesses testify at the hearing about alleged developments that occurred after the close of fact discovery using evidence never produced during discovery. The '875 Intervenors thus moved *in limine* to prevent a quintessential trial by ambush. Appx221-231 (as it relates to MIL No. 2).

## 2. The ALJ's Decision Was Based on Governing Precedent and Was Not an Abuse of Discretion

In Order No. 29, the ALJ correctly determined that some but not all of Roku's untimely evidence should be excluded. Appx221-235. The Order was clear that a "blanket exclusion of all documents produced after the close of fact discovery [was] not warranted." Appx228. Thus, the ALJ permitted Roku to submit certain late-produced evidence determined not to be prejudicial. Appx229. On the other hand, the ALJ correctly found there would be significant prejudice to the '875 Intervenors if other untimely evidence was not excluded. Appx230. For example, the '875 Intervenors "had no opportunity to examine any fact witnesses with respect to the information contained in those documents." *Id.* Similarly, Roku was precluded from testifying about evidence that Roku never produced. Appx230-231. This was not an abuse of discretion.

The ALJ's decision was based on well-established Commission precedent. As Order No. 29 notes, "[t]he requirements of the Procedural Schedule are not optional." Appx225 (internal citations omitted). "[A]dherence to the Procedural Schedule is particularly important in an ITC Investigation where time is compressed

by the nature of the proceedings and thus, at a premium." Appx225 (internal citations omitted). Therefore, "it is implied that the failure to adhere to deadlines results in prejudice to the opposing party," and ALJs have "the ability to enforce the Ground Rules and the Procedural Schedule without requiring that the [moving party] demonstrate that it has suffered prejudice." *Certain Replacement Auto. Serv. And Collision Parts and Components Thereof*, Inv. No. 337-TA-1160, Order No. 22, 2019 WL 7558359 *2 n.1 (Dec. 31, 2019).

In ITC Investigations, absent a showing of good cause, documents produced after the close of fact discovery cannot be relied on by the producing party at the hearing. *See, e.g.*, *Certain Digital Cameras, Software, and Components Thereof*, Inv. No. 337-TA-1059, Order No. 59, 2018 WL 1905571, at *3 (Feb. 26, 2018) (granting motion *in limine* to exclude Complainants' late produced prototype, late produced domestic industry evidence, and "any argument pertaining to the same"). Here, Roku failed to show good cause and seek leave from the ALJ, and there was significant prejudice to the '875 Intervenors. And Order No. 29 excluded only the evidence that prejudiced the '875 Intervenors. Accordingly, the ALJ's ruling in Order No. 29 was not an abuse of discretion.

### 3. This Court Should Not Consider Roku's Untimely Evidence That Is Not in the Record

This Court should disregard, and the '875 Intervenors move to strike, Roku's attempts to rely on an excluded declaration to show developments that allegedly

occurred after the close of fact discovery. Blue Br. 62; *see* Fed. Cir. R. 27(e) (requiring motions to strike to appear in a responsive brief). Roku cites to statements from paragraphs 5 and 8 of the December 10, 2021, Declaration of Mr. Jeffrey Peters. *Id.* Mr. Peters' Declaration was not received into evidence, and it was explicitly excluded by Order No. 29. Appx230-231. Thus, this Court should strike Appx9684-9795, Appx9807-9875, Appx9876-9900, and all reliance on these documents in Roku's principal brief (Blue Br. 62) and, as applicable, the upcoming reply brief.

## IV. This Court Should Not Vacate, and Should Affirm, the Commission's Determination That Claim 5 of the '511 Patent Is Indefinite[8]

### A. An Actual, Live Controversy Remains Over Claim 5

Roku's appeal (as concerns claim 5 of the '511 patent) is not moot, and the Commission's determination that claim 5 is indefinite should not be vacated. This Court has refused to dismiss an appeal as moot where, as here, there remains a live controversy between the parties. *See Microsoft Corp. v. ITC*, No. 2012-1445, 2014 WL 10209132, at *1 (Fed. Cir. Jan. 3, 2014) (nonprecedential). In *Microsoft*, this Court denied a motion to dismiss an appeal (from a Commission proceeding) as

---

[8] Intervenors Samsung and LG take no position on Roku's request to vacate the Commission's determinations regarding the '511 patent based on its expiration, but Samsung and LG join UEI's argument in Section IV.D. that Roku has forfeited any challenge to the Commission's indefiniteness determination. Roku has not asserted the '511 patent against Charter, Altice, or WOW, and so they take no position on issues involving the '511 patent.

moot even though the patent-in-suit had expired. A live controversy remained because there was a pending district court action involving the same parties and the same patent. This Court explained that its ruling in the appeal will thus have "a concrete legal effect on the [parties'] dispute over the same issues in the pending [district court] litigation," warranting denial of the motion to dismiss the appeal. *Id.*

The same is true here. UEI and Roku have a live controversy in the Central District of California involving the same patent claim and the same legal issue. *See id.* ("This court's ruling thus resolves a live controversy even apart from whether the Commission can any longer take action on the '133 patent or otherwise has any continuing interest in this matter. This is anything but an uncertain, future, hypothetical, or conjectural controversy. It is an actual, present controversy over issues affecting concrete interests of two parties here."). Because an actual, live controversy persists, the appeal as to claim 5 is not moot, and the Commission's final determination for claim 5 should not be vacated.

## B.    The Only Question on Appeal for Claim 5 Is a Legal Question

The parties' sole dispute for the '511 patent—whether claim 5 is indefinite—entails a ***pure question of law*** that this Court reviews de novo. *See, e.g.*, *Star Sci.*, 655 F.3d at 1373 ("Indefiniteness is a purely legal question that [this Court] reviews without deference."); *Spansion*, 629 F.3d at 1344 (explaining that this Court "reviews the Commission's determination on indefiniteness de novo"); *see Nevro*

*Corp. v. Boston Sci. Corp.*, 955 F.3d 35, 42 (Fed. Cir. 2020) ("Because the district court relied only on the intrinsic record, we review the district court's indefiniteness determination *de novo*.").

The lack of any questions of fact for this Court to review related to claim 5 is significant and distinguishes this case from others where this Court considered vacatur as to factual issues involving an expired patent. For example, in both *INVT SPE v. International Trade Commission*, 46 F.4th 1361, 1380 (Fed. Cir. 2022), and *Tessera, Inc. v. International Trade Commission*, 646 F.3d 1357, 1371 (Fed. Cir. 2011), this Court was asked to review the Commission's finding of noninfringement—a question of fact reviewed under the substantial evidence standard. Similarly, in *Texas Instruments Inc. v. U.S. International Trade Commission*, 851 F.2d 342, 344 (Fed. Cir. 1988), the question on appeal involved patent unenforceability due to inequitable conduct, which likewise involved a question of fact. While this Court could have addressed the merits in those appeals, prudence counseled against it. For example, as this Court noted in *INVT*, because the Commission's determinations (which were factual determinations) do not have preclusive effect on district court litigation, "a decision by this court does not have enough 'collateral consequences' to avert mootness, even though a pending district court case involves the same issues." *INVT*, 46 F.4th at 1370.

– 58 –

The same notion does not hold for an issue of law. When the only appellate issue for an expired patent is purely legal, as here, the concerns about insufficient collateral consequences do not exist. In fact, the collateral consequences here are paramount. As this Court has held, "the denial of preclusive effect to ITC determinations ***does not allow*** district courts . . . to 'ignore holdings of this court that bear on cases before them.'" *Powertech*, 660 F.3d at 1308 (emphasis added) (quoting *Tex. Instruments*, 90 F.3d at 1569). Therefore, this Court may and should reach the legal question of the indefiniteness of claim 5 of the '511 patent, and the California court will not be allowed to ignore this Court's holding. *Id.*

This appeal resembles the situation in *Microsoft*, where the question resolved by this Court "rest[ed] ultimately on [the Commission's] view of what the claims require," which involved "matters of claim construction, which [this Court] review[s] without deference." *Microsoft*, 731 F.3d at 1366. This Court's legal pronouncements (as to claim construction) thus bound the district court in the co-pending proceeding. The same is true here. This Court's decision on the merits will bind the district court in the parties' co-pending proceeding.

## C. Judicial Efficiency Favors Appellate Resolution of the Legal Question Now

Because the same issue involving the same claim of the same patent in a dispute between UEI and Roku is pending in the Central District of California, and because that issue is a pure question of law, judicial efficiency supports resolving

– 59 –

the issue now. Vacating the Commission's decision as moot, particularly where the question plainly is *not* moot, would waste judicial resources. The parties have already presented the issue to the Commission, and the Commission made its determination of law upon thorough consideration of the parties' arguments and evidence. There is no reasoned basis for having the parties repeat their same positions on the same issue to a new tribunal, only for this Court ultimately to have the same say it could, and should, render now.

### D. Roku Forfeited Any Argument That This Court Should Reverse the Commission's Indefiniteness Determination

Regarding claim 5 of the '511 patent, Roku asks this Court only to vacate the Commission's decision. Roku does not challenge the merits of the Commission's determination that claim 5 is indefinite as a matter of law. Thus, Roku has forfeited that argument. *Boeing Co. v. United States*, 968 F.3d 1371, 1380 (Fed. Cir. 2020) ("forfeiture involves a failure to make timely assertion of the right before a tribunal having jurisdiction to determine it") (internal citations and emphasis omitted). This Court's "'law is well established that arguments not raised in the opening brief are' forfeited." *McIntosh v. DOD*, 53 F.4th 630, 641 (Fed. Cir. 2022) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006)).

## CONCLUSION

For the foregoing reasons, this Court should affirm the Commission's determination of no violation of section 337.

Dated: February 5, 2024

*/s/ Kirk T. Bradley*
Kirk T. Bradley
M. Scott Stevens
Stephen R. Lareau
Nicholas C. Marais
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
704-444-1000

Thomas W. Davison
Adam D. Swain
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 2004-6818
202-239-3300

Ryan W. Koppelman
ALSTON & BIRD LLP
333 South Hope Street
16th Floor
Los Angeles, CA 90071-3004
213-576-1000

Holly Hawkins Saporito
Nicholas Tang Tsui
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street NE
Atlanta, GA 30309
404-881-7000

*Counsel for Universal Electronics Inc.,*
*Gemstar Technology (Qinzhou) Co. Ltd.,*

*Gemstar Technology (Yangzhou) Co. Ltd.,
C.G. Development Ltd., Universal
Electronics BV, CG México Remote
Controls, S. de R.L. de C.V., Charter
Communications, Inc., Charter
Communications Operating, LLC, Spectrum
Management Holding Company, LLC, Altice
USA, Inc., Cablevision Systems
Corporation, Cequel Communications, LLC,
and WideOpenWest, Inc.*

*/s/Andrew R. Sommer*
Andrew R. Sommer
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1000
McLean, VA 22102
703-749-1300

Richard A. Edlin
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
212-801-9200

Cyrus T. Frelinghuysen
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Washington, D.C. 20037
202-331-3000

*Counsel for Samsung Electronics Co., Ltd.
and Samsung Electronics America, Inc.*

*/s/ James J. Lukas, Jr.*
James J. Lukas, Jr.
GREENBERG TRAURIG, LLP
77 West Wacker Drive

– 62 –

Suite 3100
Chicago, IL 60601
312-456-8400

Callie Sand
GREENBERG TRAURIG, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
312-456-8400

Cyrus T. Frelinghuysen
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Washington, D.C. 20037
202-331-3000

*Counsel for LG Electronics, Inc. and LG Electronics U.S.A., Inc.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1317 _____

**Short Case Caption:** Roku, Inc. v. ITC _____

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 13673_____ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 2/5/2024_____    Signature: /s/ Kirk T. Bradley _____

Name: Kirk T. Bradley _____

Save for Filing