**No. 23-1317**

# United States Court of Appeals for the Federal Circuit

ROKU, INC.,
*Appellant*

v.

INTERNATIONAL TRADE COMMISSION,
*Appellee*

UNIVERSAL ELECTRONICS, INC., GEMSTAR TECHNOLOGY(QINZHOU) CO. LTD., GEMSTAR TECHNOLOGY (YANGZHOU) CO. LTD., C.G. DEVELOPMENT LTD., UNIVERSAL ELECTRONICS BV, CG MEXICO REMOTE CONTROLS, S. de R.L. de C.V., CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, ALTICE USA, INC., CABLEVISION SYSTEMS CORPORATION, CEQUEL COMMUNICATIONS, LLC d/b/a SUDDENLINK COMMUNICATIONS, WIDEOPENWEST, INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., LG ELECTRONICS INC., LG ELECTRONICS USA, INC.,
*Intervenors*

*Appeal from the United States International Trade Commission in Investigation No. 337-TA-1263*

## APPELLANT'S REPLY BRIEF

Jonathan D. Baker
Dino Hadzibegovic
Mark H. Rogge
**DICKINSON WRIGHT RLLP**
615 National Avenue, Suite 220
Mountain View, California 94043
Telephone: (408) 701-6180

Craig Y. Allison
**DICKINSON WRIGHT PLLC**
424 Church Street, Suite 800
Nashville, Tennessee 37219
Telephone: (408) 701-6117

Steven R. Daniels
Michael D. Saunders
**DICKINSON WRIGHT PLLC**
607 West 3rd Street, Suite 2500
Austin, Texas 78701
Telephone: (512) 770-4200

*Counsel for Appellant Roku, Inc.*



# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---:|:---|
| **Case Number** | 2023-1317 |
| **Short Case Caption** | Roku, Inc. v. ITC |
| **Filing Party/Entity** | Roku, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/03/2024

Signature:  /s/ Jonathan D. Baker

Name:  Jonathan D. Baker

i

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Roku, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Kenneth Dyer (formerly of) Dickinson Wright PLLC | Shih Ching (Evi) Li (formerly of) Dickinson Wright PLLC | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)    ☐   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................... vii

TABLE OF ABBREVIATIONS ................................................................x

INTRODUCTION ....................................................................................1

ARGUMENT ...........................................................................................2

I.     THE COMMISSION ERRED IN DETERMINING THAT CLAIM 10 OF THE '875 PATENT IS INVALID. ......................................2

     A.     The Commission Erred in Finding that Claim 10 Is Anticipated. ..........................................................................2

          1.     The language of claim 1 supports Roku's construction..............2

          2.     Roku's construction is consistent with the preferred embodiment..................................................................3

          3.     The patentee defined the term "iterating" implicitly in the specification. .........................................................5

          4.     The Commission's and Respondents' remaining arguments are meritless..............................................7

     B.     The Commission Erred in Determining that Claim 10 Would Have Been Obvious...............................................................8

          1.     The Commission's finding of a motivation to modify is based on conclusory testimony and lacks substantial evidence. ..................................................................8

          2.     Respondents failed to argue and the Commission failed to find a reasonable expectation of success. ...................11

          3.     The Commission's obviousness determination relied on improper hindsight. ...............................................12

          4.     Roku did not forfeit its arguments. ...........................13

iv

II.   THE COMMISSION ERRONEOUSLY INTERPRETED
      SECTION 337 TO PRECLUDE RELIANCE ON POST-
      COMPLAINT EVIDENCE TO SHOW A DOMESTIC
      INDUSTRY IN THE PROCESS OF BEING ESTABLISHED. .................14

      A.   Under the Proper Statutory Interpretation, a Complainant
           Can Rely on Post-Complaint Evidence to Show a Domestic
           Industry in the Process of Being Established. ....................................14

           1.   The statute's plain language supports consideration of
                post-complaint evidence. .........................................................14

           2.   Congress did not alter the normal rule that an equitable
                claim can be established using post-complaint events. ............17

           3.   The legislative history demonstrates that Congress
                intended to allow post-complaint evidence. .............................18

           4.   Roku's interpretation is consistent with the
                Commission's interpretation of other elements of
                section 337. ..............................................................................19

           5.   This Court has not construed section 337 to preclude
                reliance on post-complaint evidence as a general rule. ............20

           6.   The Commission's rules do not conflict with
                consideration of post-complaint evidence. ...............................22

           7.   The Commission's non-workability arguments lack
                merit. ........................................................................................23

      B.   The Commission's Statutory Interpretation Is Not Entitled to
           *Chevron* Deference. .............................................................................24

      C.   Respondents' Argument that this Court Should Affirm the
           Commission's Decision Based on the ALJ's Analysis of
           Post-Complaint Evidence Is Procedurally Improper and
           Factually Meritless .............................................................................24

      D.   The ALJ's Per Se Exclusion of Events After the Fact
           Discovery Cutoff Constitutes Additional Prejudicial Error. ...............26

E. The Commission Correctly Held That Domestic Industry in the Process of Being Established Does Not Require Existence of a Physical Article Protected by the Patent. ....................27

III. THE COURT SHOULD VACATE THE COMMISSION'S INVALIDITY DETERMINATION REGARDING THE EXPIRED '511 PATENT..............................................................................29

CONCLUSION ....................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
  811 F.3d 1334 (Fed. Cir. 2016) ........................................................30

*Amarin Pharma, Inc. v. ITC*,
  923 F.3d 959 (Fed. Cir. 2019) ..........................................................15

*AstraZenica LP v. Apotex, Inc.*,
  633 F.3d 1042 (Fed. Cir. 2010) .......................................................5, 7

*Bally/Midway Manufacturing Co. v. ITC*,
  714 F.2d 1117 (Fed. Cir. 1983) ...................................................20, 23

*Butler v. Butler*,
  14 Ky. 201 (1823) .............................................................................18

*Continental Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ............................................................6

*Electronic Pianos*,
  Report on Investigation No. 337-31, ITC Pub. 721 (Mar. 1975) .......23

*Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown*,
  897 F.2d 275 (7th Cir. 1990) .............................................................17

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
  750 F.3d 1304 (Fed. Cir. 2014) ..........................................................6

*Holmberg v. Armbrecht*,
  327 U.S. 392 (1946)...........................................................................17

*Hyosung TNS Inc. v. ITC*,
  926 F.3d 1353 (Fed. Cir. 2019) ........................................................30

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ............................................................6

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
  751 F.3d 1327 (Fed. Cir. 2014) ........................................................13

*INVT SPE LLC v. ITC,*
    46 F.4th 1361 (Fed. Cir. 2022) ................................................29, 30, 31

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004) .............................................................6

*Merck & Cie v. Gnosis S.P.A.,*
    808 F.3d 829 (Fed. Cir. 2015) ...........................................................11

*Microsoft Corp. v. ITC,*
    No. 2012-1445, 2014 WL 10209132 (Fed. Cir. Jan. 3, 2014)............29

*Motiva, LLC v. ITC,*
    716 F.3d 596 (Fed. Cir. 2013) ......................................................21, 23

*Personal Web Techs., LLC v. Apple, Inc.,*
    848 F.3d 987 (Fed. Cir. 2017) ...........................................................10

*Philip Morris Products S.A. v. ITC,*
    63 F.4th 1328 (Fed. Cir. 2023) ..........................................................21

*Powertech Tech. Inc. v. Tessera, Inc.,*
    660 F.3d 1301 (Fed. Cir. 2011) ....................................................30, 31

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943)......................................................................24, 27

*Spansion, Inc. v. ITC,*
    629 F.3d 1331 (Fed. Cir. 2010) ..........................................................30

*Sphygmomanometers,*
    Report on Investigation No. 337-26, TC Pub. 457
    (Jan. 1972).........................................................................................24

*Star Scientific, Inc. v. RJ Reynolds Tobacco Co.,*
    655 F.3d 1364 (Fed. Cir. 2011) ..........................................................30

*Teva Pharm. USA v. Sandoz, Inc.,*
    574 U.S. 318 (2015).............................................................................30

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.,*
    18 F.4th 1377 (Fed. Cir. 2021) .....................................................11, 12

*Thorner v. Sony Computer Entm't Am.*,
  669 F.3d 1362 (Fed. Cir. 2012) ............................................................6

*TQ Delta, LLC v. Cisco Sys., Inc.*,
  942 F.3d 1352 (Fed. Cir. 2019) ...........................................................9

*Wilson v. Garcia*,
  471 U.S. 261 (1985)............................................................................17

*Woodbridge v. Pratt & Whitney Co.*,
  69 Conn. 304, 37 A. 688 (Conn. 1897) ..............................................18

**Statutes**

19 U.S.C. § 1337(a)(2)............................................................................28

19 U.S.C. § 1337(a)(3)............................................................................28

19 U.S.C. § 1337(c) ................................................................................16

**Other Authorities**

19 C.F.R. § 210.12(a)(6)(i) .....................................................................15

19 C.F.R. § 210.18(b)-(c)........................................................................22

19 C.F.R. § 210.18(f) ..............................................................................22

H.R. Rep. No. 100-40, pt. 1 (1987).........................................................28

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| '875 patent | U.S. Patent No. 8,378,875 [Appx272-283] |
| '511 patent | U.S. Patent No. 7,388,511 [Appx284-292] |
| Roku | Roku, Inc. |
| UEI | Universal Electronics, Inc., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co., Ltd., C.G. Development Ltd., Universal Electronics BV, CG Mexico Remote Controls, S. De R.L. De C.V. |
| Charter | Charter Communications, Inc., Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC |
| Altice | Altice USA, Inc., Cablevision Systems Corporation, and Cequel Communications, LLC |
| WOW | WideOpenWest, Inc. |
| LG | LG Electronics and LG Electronics USA, Inc. |
| Samsung | Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. |
| Respondents, or Intervenors | UEI, Charter, Altice, WOW, LG, and Samsung |
| ITC, or the Commission | U.S. International Trade Commission |
| Roku's brief | Appellant Roku's Opening Brief [Dkt. 43, filed 10/11/2023] |
| ITC Brief | Response Brief of Appellee International Trade Commission [Dkt. 55; filed 2/5/2024] |
| Respondents' Brief | Brief for Intervenors [Dkt. 56; filed 2/5/2024] |
| ALJ | Administrative Law Judge |
| The ITC Investigation | *In re Certain Televisions, Remote Controls, and Components Thereof*, Inv. No. 337-TA-1263 (International Trade Commission) |
| ID | Initial Determination of the ALJ, ITC Inv. No. 337-TA-1263 (June 28, 2022) [Appx38-220] |
| Opinion | Commission Opinion, ITC Inv. No. 337-TA-1263 (Oct. 28, 2022) [Appx1-29] |
| Order 30 | ALJ's Order No. 30: Construing Certain Terms of U.S. Patent No. 7,388,511 (*Markman* Claim Construction), ITC Inv. No. 337-TA-1263 (Jan. 14, 2022) [Appx236-258] |

x

| Order 37 | ALJ's Order No. 37: Initial Determination Granting Summary Determination In-Part on the Invalidity of U.S. Patent No. 7,388,511, ITC Inv. No. 337-TA-1263 (June 24, 2022) [Appx30-37] |
| --- | --- |
| POSA | Person of Ordinary Skill in the Art |

## INTRODUCTION

Roku's opening brief showed several legal errors in the Commission's invalidity and domestic industry determinations.  In response, the Commission and Respondents offer a variety of legally insufficient arguments.  For anticipation, they rely on a claim construction that has no support in the intrinsic record.  For obviousness, they rely on testimony concerning unclaimed functionality, conclusory testimony without articulated reasoning, and an implicit finding of a reasonable expectation of success despite the fact that Respondents never made any such argument.

For domestic industry, they attempt to justify the Commission's refusal to consider post-complaint evidence.  But they identify nothing in the statutory language or legislative history that supports the Commission's interpretation or shows Congress intended to modify the standard practice allowing consideration of such evidence.  Moreover, the Federal Circuit cases they cite do not set forth any general rule precluding consideration of such evidence.

Regarding the Commission's invalidity determination on the '511 patent, the Respondents argue that vacatur should be denied because of a pending district court case. But the Respondents' arguments are foreclosed by this Court's binding precedent.  Furthermore, the Commission itself agrees with Roku that its determination should be vacated due to the patent's expiration.

1

## ARGUMENT

## I. THE COMMISSION ERRED IN DETERMINING THAT CLAIM 10 OF THE '875 PATENT IS INVALID.

### A. The Commission Erred in Finding that Claim 10 Is Anticipated.

In its opening brief, Roku showed that the Commission incorrectly construed limitation 1[c(1)]—"iterating, via the processor and the memory, through the remote control code-sets corresponding to the brand"—by interpreting it so broadly that it would cover a user manually pressing a key repeatedly to send codes to the target device. Roku Br. 22-23. The Commission made this construction in the face of intrinsic evidence to the contrary, including the specification's implicit definition of "iterating" that does not support this construction. *Id*. 24-26. As a consequence of this erroneous construction, the Commission erred in finding that the PMDVD6 prior art reference satisfied this limitation.

None of the arguments in the Commission's or Respondents' briefs rebut this showing.

### 1. The language of claim 1 supports Roku's construction.

The Commission and Respondents argue that "nothing in the claim language itself prohibits user intervention." Respondents Br. 24-25; Commission Br. 23. But claim 1 is a method claim in which each step, including the "iterating" step, is performed by the remote, not by the user. Roku Br. 23. And the claim language expressly recites that the "iterating" step is performed "via the processor and the

2

memory." *Id*. Moreover, the claim term "iterating," when properly construed in light of the specification, does not encompass the user repeatedly pressing a key to step through the code-sets. Roku Br. 24-26. Therefore, Roku's construction is completely consistent with the claim language.

### 2. Roku's construction is consistent with the preferred embodiment.

The Commission and Respondents argue that Roku's construction is inconsistent with the preferred embodiment's disclosure of a user pressing or releasing buttons in connection with the iteration. Respondents Br. 24-25; Commission Br. 24. But the buttons that are pressed (or released) in their examples serve only to start or stop the iteration—not to perform the iteration. Appx280 (6:28-30; 6:43-44). As Roku's expert testified, "I do not agree with [Respondents'] assertion that … pressing the button or pressing and holding the button [has] to do with iteration. That is *simply starting the scanning step*…." Appx10735 (846:17-21) (emphasis added).

Respondents assert that Roku's construction excludes the preferred embodiment because steps 8, 9, and 10 in Figure 5 allegedly "disclose a 'user' using multiple key presses to iterate through codesets." Respondents Br. 26-28. But the patent shows no such thing.



Appx275 (Fig. 5) (annotated by Respondents).

4

The patent's description of Figure 5 is completely consistent with Roku's claim construction. The iteration starts when a key is pressed in step 4, and ends when that key is pressed again (or released) in step 8. Appx280 (6:28-30; 6:43-45). No keys need to be pressed by the user to step through the code-sets. *Id*. (6:28-45).

Contrary to Respondents' assertion, the user's key press at step 8 does *not* cause the remote to perform the iteration—it causes the remote to *stop* the iteration. Appx280 (6:43-45). And before reaching the key presses in steps 9 and 10, the iteration already stopped in step 8. *Id*. (6:43-51). Because these keypresses either cause the iteration to stop or occur after the iteration has already stopped, there is no contradiction with Roku's construction.

### 3. The patentee defined the term "iterating" implicitly in the specification.

Respondents accuse Roku of committing "one of the cardinal sins" of patent law by importing limitations from the specification into the claims. Respondents Br. 29; Commission Br. 24-25. Far from committing a "cardinal sin," Roku has simply shown that the patentee implicitly defined the term "iterating" through the consistent use of the term throughout the specification. *See, e.g., AstraZenica LP v. Apotex, Inc.*, 633 F.3d 1042, 1052 (Fed. Cir. 2010) (affirming determination that claim term "budesonide composition" was defined by implication to mean "budesonide dispersed in a solvent" because specification "consistently describes the budesonide compositions in that way").

5

None of the cases cited by the Commission or Respondents are comparable to the facts here, where the patentee consistently used a claim term ("iterating") in a specific way throughout the specification, including in describing multiple embodiments and the prior art, thereby implicitly defining the term. Roku Br. 24-26. In contrast, the cases cited by the Commission and Respondents dealt with alleged disavowal of claim scope, *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797-98 (Fed. Cir. 2019), or with situations where the alleged definition was not consistent with other claims or the file history, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004), or was found in a single figure of one embodiment, *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014), or would exclude a preferred embodiment, *Thorner v. Sony Computer Entm't Am.*, 669 F.3d 1362, 1368 (Fed. Cir. 2012). None of those situations apply here.

The Commission also cites *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 844 (Fed. Cir. 2010) to support its argument that the '875 specification's use of the permissive language "*may be*" shows that the patentee did not demonstrate "a clear intention to limit the otherwise broad language" of the claim term. Commission Br. 25. But, in *i4i*, the Court also relied on other, more salient reasons to conclude that the specification did not contain an implicit definition. For example, one of the embodiments was inconsistent with the proposed definition. *See i4i*, 598 F.3d at 843.

That the use of permissive language is not dispositive is shown by *AstraZenica*, which held that the specification contained an implicit definition despite using permissive language. *See AstraZenica*, 633 F.3d at 1052 ("[t]he drug *can be* provided as an aqueous suspension"; "[t]he drug *can be* delivered in a solvent") (emphasis added).

### 4.    The Commission's and Respondents' remaining arguments are meritless.

Respondents argue that Roku's construction should be rejected for the same reason that the Commission construed the "testing" step not to require user intervention. Respondents Br. 30. But the Commission rejected Respondents' attempt to add the limitation "performed by a user" into the "testing" step because the specification did not provide a definition and lacked support for that construction. Appx263. In contrast, the specification implicitly defines "iterating" and fully supports Roku's construction. Additionally, contrary to Respondents' assertion (Respondent Br. 30), the recitation of user actions in certain dependent claims does not require the term "iterating" to encompass a user stepping through the code-sets because those references all relate to user actions that cause the iteration to stop or that occur after the iteration has already stopped.

The Commission and Respondents argue that Roku cannot rely on extrinsic evidence to contradict unambiguous intrinsic evidence. Commission Br. 25-26; Respondents Br. 30. But Roku's argument is based on the *intrinsic record*. Roku

Br. 23-26. Roku cites extrinsic evidence only as further confirmation of what the intrinsic record already shows.

As for Respondents' observation that the PTAB, in a separate IPR proceeding, relying on different prior art, found claim 10 invalid (Respondents Br. 31), that determination is currently on appeal and is in no way binding on this Court. With respect to Roku's alleged "acquiescence" to a contrary claim construction, Respondents are apparently referring to Roku's decision to focus on other arguments in that proceeding due to space constraints. Roku's decision does not in any way prejudice its right to appeal the Commission's construction here.

## B. The Commission Erred in Determining that Claim 10 Would Have Been Obvious.

### 1. The Commission's finding of a motivation to modify is based on conclusory testimony and lacks substantial evidence.

In its opening brief, Roku showed that the Commission's finding of a motivation to modify the PMDVD6 prior art to use press-and-hold was based on a handful of conclusory and irrelevant statements by Respondents' expert Dr. Houh. Roku Br. 28-31. For example, the Commission relied on Dr. Houh's testimony that "it would be easier for the user" to press-and-hold a button rather than potentially press the button "a hundred times or more." *Id*. at 30-31; Appx160; Appx10755 (925:1-22). But in their briefs, neither the Commission nor Respondents dispute that Dr. Houh was testifying about the *auto-scan* procedure (not covered by claim 10),

8

in which the user steps through every code-set stored in the remote, and not the *brand-search* procedure (the procedure that *is* covered by claim 10), which steps through only the much smaller number of code-sets associated with a specific brand. Commission Br. 31; Respondents Br. 34.  Nor do they dispute that Dr. Houh offered no testimony regarding the number of button presses that would be required using the brand-search method, or how that much smaller number would affect his motivation-to-modify arguments.  *Id*.  Indeed, they do not dispute that most of the brands supported by the PMDVD6 have four or fewer code-sets.  *Id*.; Roku Br. 30, n.4.  Dr. Houh's testimony about auto-scan (a feature not recited in claim 1 or 10) is simply irrelevant to the issue of motivation to modify, and nothing in the Commission's or Respondents' briefs addresses that deficiency.

Leaving aside the irrelevant testimony about the auto-scan procedure, Dr. Houh's testimony on motivation to modify boils down to conclusory statements such as "it would just be easier to press and hold [a button] and keep it held instead of pressing it numerous times."  Appx10700 (703:1-4); Appx160.  Such conclusory testimony without articulated reasoning is insufficient to sustain an obviousness determination.  *See, e.g., TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1359 (Fed. Cir. 2019).

Finally, the Commission and Respondents point to a statement in the ID as purported evidence of a motivation to modify:  that the parties' experts testified that

"it is easy to write the software code to make the change for keeping a key pressed through iteration." Appx160; Commission Br. 28; Respondents Br. 34. But, as this Court has held,

> [T]hat reasoning [of the Board that a combination of references *would have allowed for* the claimed feature] seems to say no more than that a skilled artisan, once presented with the two references, would have understood that they *could be* combined. And that is not enough: it does not imply a motivation to pick out those two references and combine them to arrive at the claimed invention.

*Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017).

Similarly, testimony that it would have been easy to make a modification (i.e., that a POSA *could have* made the modification) does not provide evidence that a POSA *would have been motivated* to make the modification. And the Commission's finding that "the modification for continual pressing of the key is known and within the level of skill of one of ordinary skill in the art" (Appx160) states only that a POSA *could* have made the modification, and provides no evidence that a POSA would have been *motivated* to make that modification. As Roku's technical expert testified at the ITC hearing, "I don't think I'm disputing that in order to write the code to make the change would be particularly complicated…. The dispute is why would you write that code in the first place. Is there a reason to switch the code?" Appx10736-10737 (550:17-551:1).

### 2.   Respondents failed to argue and the Commission failed to find a reasonable expectation of success.

Neither the Commission nor Respondents dispute that there is no explicit finding of a reasonable expectation of success in the ID or the Commission's opinion. Instead, they argue that "an explicit statement of a reasonable expectation of success" is not required "in every case," citing *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 836 (Fed. Cir. 2015). However, this is not one of those cases where an explicit finding is unnecessary. Respondents never argued in their post-trial brief that there was a reasonable expectation of success, and therefore the Commission could not have made an implicit finding on this issue. Roku Br. 32.

But even if this were such a case, the Commission must, at a minimum, apply the right standard. *See Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1381 (Fed. Cir. 2021) ("Whether the Board applied the correct standard in assessing reasonable expectation of success … is a question of law that we review de novo."). Here, the Commission's and Respondents' briefs fail to show that the Commission found a reasonable expectation of success, even implicitly, under the correct standard.

To show reasonable expectation of success, the Commission and Respondents point to the ID's statement that the experts testified that it would have been "easy to write the software to make the change." Commission Br. 33-34; Respondents Br. 34-35. But "[t]he reasonable-expectation-of-success analysis must be tied to the

11

scope of the claimed invention," and assesses whether a POSA "would reasonably have expected" modifying or combining references "would be successful" in achieving the goal of the invention. *See Teva*, 18 F.4th at 1381. The test is *not* how difficult it would be, or how long it would take, to implement the modification or combination.

For example, in *Teva*, the claim involved a method for treating Cushing's syndrome by administering mifepristone and a strong CYP3A inhibitor. *Id*. at 1380. The Court held that the correct test was whether a POSA "would reasonably have expected co-administration of more than 300 mg of mifepristone with a strong CYP3A inhibitor to be safe for the treatment of Cushing's syndrome or related symptoms in patients." *Id*. This test had nothing to do with the ease or difficulty in performing the co-administration of the two drugs.

Here, the Commission made no express finding regarding reasonable expectation of success, and to the extent it alleges it did so implicitly, its brief has not pointed to any evidence that it applied the correct standard.

### 3.    The Commission's obviousness determination relied on improper hindsight.

In its opening brief, Roku showed that, by relying on Dr. Houh's conclusory testimony, the Commission fell into the error of hindsight bias. Roku Br. 32-33. In response, the Commission and Respondents point to the same statement in the ID: "the proposed modification is not improper hindsight because it uses knowledge

12

within the level of ordinary skill at the time the invention was made." Commission Br. 32; Respondents Br. 36. But as explained above, this statement is relevant only to whether the modification *could* be made—it provides no evidence that a POSA *would have been motivated* to make the modification. *See InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1352 (Fed. Cir. 2014) (holding that expert "succumbed to hindsight bias" when "testimony primarily consisted of conclusory references to her belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so.").

### 4.    Roku did not forfeit its arguments.

The Commission and Respondents allege that Roku forfeited its arguments against obviousness because it allegedly did not seek Commission review of those issues. Commission Br. 30; Respondents Br. 33. Contrary to these allegations, Roku sought Commission review of the ALJ's obviousness determination in a section of Roku's Petition for Review entitled "The Philips PMDVD6 Remote Control Does Not Render Obvious Limitations 1(c) or 1(c)(1) of Claim 1." Appx10364-65. In that section, Roku disputed the ALJ's finding that there would have been a motivation to modify the prior art, Appx10364 ("However, it would not have been obvious to one of skill in art to modify the invention as suggested by the ID."), and also argued that such a modification would have been an example of hindsight bias. *Id.* ("It is hindsight bias to use one of the objects of the invention to attempt to show

13

obviousness."). Roku also argued that there was no showing of a "reasonable expectation of success" of the modification. Appx10364-65 ("Moreover, the ID failed to provide any findings on whether there would have been a motivation to combine automatic scanning through the code-sets with the PMDVD6 reference *with a reasonable expectation of success.*"). And Roku argued that dependent claim 10 was likewise not obvious for these same reasons. Appx10365.

## II. THE COMMISSION ERRONEOUSLY INTERPRETED SECTION 337 TO PRECLUDE RELIANCE ON POST-COMPLAINT EVIDENCE TO SHOW A DOMESTIC INDUSTRY IN THE PROCESS OF BEING ESTABLISHED.

### A. Under the Proper Statutory Interpretation, a Complainant Can Rely on Post-Complaint Evidence to Show a Domestic Industry in the Process of Being Established.

In its opening brief, Roku showed that the statutory language, historical practice, legislative history, and the Commission's interpretation of other section 337 provisions confirm that a complainant can rely on post-complaint evidence to show a domestic industry in the process of being established. Roku Br. 34-46. As explained below, the Commission's and Respondents' arguments fail to support their contrary interpretation.

#### 1. The statute's plain language supports consideration of post-complaint evidence.

As Roku explained in its opening brief, the statute's use of the present tense strongly indicates that there should be no artificial cutoff of evidence as of the date of the complaint. Roku Br. 36-37. In response, the Commission and Respondents

argue that domestic industry should typically be evaluated based on events before the complaint because section 337(b)(1) requires the Commission to investigate alleged violations and domestic industry is a necessary element.  Commission Br. 44-45; Respondents Br. 41-42.  However, that argument confuses the pleading requirements for a complaint with the evidence that a complainant can rely upon to prove a violation at trial.  Nothing in the statute or rules requires a complainant to set forth in its complaint all facts and evidence that it intends to rely upon to prove a violation.  Rather, the complaint must allege sufficient facts regarding an existing violation to show that an investigation should be instituted.  *See* 19 C.F.R. § 210.12(a)(6)(i).  And this appeal does not involve any question about the sufficiency of Roku's complaint because the Commission did in fact institute an investigation.  *See Amarin Pharma, Inc. v. ITC*, 923 F.3d 959, 965 (Fed. Cir. 2019).

Thus, contrary to the Commission's argument (Commission Br. 45-47), the question is not whether the Commission can institute an investigation based on future expected activity, but rather, whether the statute precludes a complainant that files a well-pleaded complaint alleging an existing violation from relying on additional events that occur after the date of the complaint to prove a violation at trial.

The Commission and Respondents argue that Roku provides no explanation for why the statute's use of the present tense favors evaluating domestic industry as

15

of the close of the evidentiary record rather than any other date.  Commission Br. 50; Respondents Br. 42.  However, as explained in Roku's opening brief, the statute states that "[t]he Commission shall determine … whether or not there *is* a violation of this section."  19 U.S.C. § 1337(c) (emphasis added).  The use of the present tense therefore requires the Commission to make that determination based on the full record available to it at the time of its determination.

Finally, the Commission and Respondents argue that Roku's interpretation would also require evaluation of an *existing* domestic industry as of the close of the evidentiary record (or require institution of an investigation based on future importation or infringement).  Commission Br. 51; Respondents Br. 42.  This argument fails for multiple reasons.  First, since this appeal only involves an industry in the process of being established, this Court need not resolve the question of whether post-complaint evidence can be used to prove a violation regarding other section 337 requirements.  Second, because the phrase "in the process of being established" conveys an ongoing process, the argument for allowing consideration of post-complaint evidence is even stronger for a domestic industry in the process of being established than for the other parts of section 337.  Third, the Commission and Respondents once again confuse the pleading requirements with the evidence that can be used to prove a violation at trial.  Indeed, the Commission routinely considers post-complaint evidence regarding infringement and importation.  Roku Br. 44-45.

16

### 2. Congress did not alter the normal rule that an equitable claim can be established using post-complaint events.

In its opening brief, Roku showed that: (a) when section 337 was enacted, patent-infringement and unfair competition actions were brought in equity; (b) courts of equity determined entitlement to relief based on facts at the time of trial or final judgment; and (c) there was no indication that Congress intended to alter this normal practice. Roku Br. 38-40. The Commission and Respondents do not dispute any of these points.

Rather, the Commission and Respondents argue that these principles do not apply here because (1) the Commission's remedies are "statutory, not equitable" and (2) the Commission treats violation and remedy as separate inquiries. Commission Br. 51-52; Respondents Br. 42-43. However, given the similarity between section 337 actions and patent/unfair competition actions, Congress would have expected the same principle to apply. *See, e.g., Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946) ("When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights."); *Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (looking to personal injury law as most analogous law to statutory § 1983 claim); *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown*, 897 F.2d 275, 281 (7th Cir. 1990) (looking to similar state laws in interpreting ERISA). Moreover, the Commission fails to identify any other body of law that is *more* relevant.

17

Additionally, even if the Commission treats violation and remedy as separate inquiries, courts of equity considered post-complaint evidence for both violation *and* remedy. *See e.g.*, *Woodbridge v. Pratt & Whitney Co.*, 69 Conn. 304, 37 A. 688, 698 (Conn. 1897) ("An action at law can only be supported on the facts existing when it was first brought. … Equitable proceedings rest upon different foundations, and in them the parties can always rely on new matter, if properly pleaded."); *Butler v. Butler*, 14 Ky. 201, 202 (1823) ("It will be admitted, that the trial of an issue in a court of common law, determines upon the controversy as it stood at the commencement of the action …. But the rule in a court of equity is somewhat different. The chancellor is not tied down to such strictness, as to refuse relief in all cases where the bill was filed prematurely.").

### 3.    The legislative history demonstrates that Congress intended to allow post-complaint evidence.

Roku showed in its opening brief that the legislative history supports its interpretation. Roku Br. 41-43. In response, the Commission and Respondents assert that the legislative history supports evaluating domestic industry at the time of the complaint based on Congress's statements that "[t]he owner of the property right must be *actively engaged* in steps leading to the exploitation of the intellectual property," and that the owner must "demonstrate that he *is taking* the necessary tangible steps to establish such an industry." Commission Br. 46-47; Respondents Br. 43-44. But they fail to explain how the words "actively engaged" and "is taking"

indicate a Congressional intent to preclude consideration of events occurring after the date of the complaint. Indeed, the phrases "actively engaged" and "is taking" refer to an ongoing process where post-complaint events would be highly relevant.

### 4.    Roku's interpretation is consistent with the Commission's interpretation of other elements of section 337.

Roku also showed in its opening brief that the Commission routinely considers post-complaint evidence for importation and infringement. Roku Br. 44-45. The Commission concedes that it routinely adjudicates section 337 violations regarding products that were first imported after the date of the complaint but attempts to justify this inconsistent treatment on grounds of efficiency. Commission Br. 46. However, the Commission identifies no statutory basis for allowing efficiency to justify considering post-complaint evidence regarding infringement and importation while refusing to consider post-complaint evidence regarding domestic industry.

Moreover, the Commission completely fails to dispute, let alone justify, its practice of considering post-complaint acts of contributory and induced infringement. Roku Br. 45. In those cases, a violation based on contributory and induced infringement could not possibly have existed at the time the complaint was filed because the respondents did not even have knowledge of the asserted patent before the filing of the complaint.

**5.    This Court has not construed section 337 to preclude reliance on post-complaint evidence as a general rule.**

The Commission and Respondents argue that three Federal Circuit cases hold that post-complaint evidence cannot be considered when evaluating a domestic industry in the process of being established.  Commission Br. 41-44; Respondents Br. 37-40.  However, none of the cited cases set forth a general rule precluding consideration of post-complaint evidence of domestic industry.

In *Bally/Midway Manufacturing Co. v. ITC*, 714 F.2d 1117 (Fed. Cir. 1983), this Court sought to protect a complainant that had a domestic industry at the time of the complaint but lost it by the time the Commission rendered its decision due to the respondents' unfair acts.  This Court concluded that "*in the circumstances of this case* the proper date for determining [domestic industry] … was the date on which the complaint was filed rather than the date on which the Commission rendered its decision." *Id*. at 1121 (emphasis added).  This Court held that it was appropriate to use the date of the complaint in that case because unfair competition had destroyed the patent owner's efforts to establish a domestic industry after the complaint was filed. *Id*.  But this Court specifically limited its holding to "the circumstances of this case," and did not preclude the Commission from considering post-complaint evidence in other cases.  Additionally, this case did not even address a domestic industry "in the process of being established" because that provision was added years later.

Similarly, in *Motiva, LLC v. ITC*, 716 F.3d 596 (Fed. Cir. 2013), this Court did not announce a general rule precluding consideration of post-complaint evidence. In *Motiva*, the complainant had discontinued its domestic-industry development three years before filing the complaint yet nonetheless argued that it satisfied the domestic industry requirement.  716 F.3d at 601, n.6.  This Court merely affirmed using the complaint's filing date rather than the date three years *before* the complaint, and noted that its holding applied under the facts "in this case." *Id*.  Indeed, in *Motiva*, this Court was not even asked to consider whether post-complaint evidence could be used.

Finally, in *Philip Morris Products S.A. v. ITC*, 63 F.4th 1328 (Fed. Cir. 2023), this Court held that there was no requirement in section 337 for FDA approval in order for a product to satisfy the domestic industry requirement.  In a footnote, this Court noted that "the filing date of the complaint is the 'relevant date at which to determine if the domestic industry requirement' is satisfied." *Id*. at 1341, n.4.  But that footnote constitutes dicta because it was not necessary to this Court's decision and the consideration of post-complaint evidence was not even at issue.  Furthermore, the case involved an existing domestic industry rather than a domestic industry in the process of being established.

21

### 6. The Commission's rules do not conflict with consideration of post-complaint evidence.

The Commission argues that allowing consideration of post-complaint evidence would conflict with its rules because it would allegedly prevent a respondent from moving for summary determination immediately after institution of the investigation. Commission Br. 57-58. Not so. Allowing consideration of post-complaint evidence does not require the evidentiary record to be kept open until after trial. Rather, the evidentiary record on an issue can be closed earlier via a summary determination ruling. *See* 19 C.F.R. § 210.18(f) ("An order of summary determination shall constitute an initial determination of the administrative law judge"). A summary determination motion on domestic industry, just like all summary determination motions, is decided based on the evidence (including any post-complaint evidence) presented to the ALJ. 19 C.F.R. § 210.18(b)-(c). Indeed, the Commission's argument is belied by the fact that, in the present case, respondents filed a motion for summary determination which the ALJ denied based in part on post-complaint evidence. Order No. 25, at 5.

The Commission also argues that allowing a complainant to rely on post-complaint evidence would frustrate the orderly conduct of investigations because ALJs typically require parties to disclose their domestic industry contentions in discovery. Commission Br. 57-58. But as discussed above, the Commission routinely considers post-complaint evidence regarding infringement and importation

without issue. Similarly allowing post-complaint evidence regarding domestic industry does not override procedural rules governing the discovery process.

### 7. The Commission's non-workability arguments lack merit.

The Commission argues that "Roku's proposed approach to domestic industry is unworkable" because "Roku repeatedly promised certain development milestones during the investigation, only to have them delayed." Commission Br. 47-48. However, rather than showing that Roku's interpretation is unworkable, the unpredictable nature of the development process for a domestic industry in the process of being established provides further support that *all* relevant evidence—including post-complaint evidence—can and should be taken into account.

Indeed, the Commission's prior practice was to evaluate domestic industry as of the close of the evidentiary record, and the Commission changed its stated practice—not because it found it to be unworkable—but rather because of its misinterpretation of this Court's decisions in *Bally* and *Motiva*. In particular, prior to this Court's *Bally* decision, the Commission often considered post-complaint events when analyzing domestic industry. *See, e.g.*, *Bally*, 714 F.2d at 1121 (noting that "[t]he Commission based its determination that there was no Rally-X industry on the market conditions that existed when it decided the case."); *Electronic Pianos*, Report on Investigation No. 337-31, ITC Pub. 721, at 7, A-64 to A-67, A-71 (Mar. 1975) (considering post-complaint evidence regarding domestic industry presented

at hearing and observations from Commission's factory visit two years after complaint filed); *Sphygmomanometers*, Report on Investigation No. 337-26, TC Pub. 457, at 6 (Jan. 1972) (considering post-complaint evidence regarding domestic industry, and stating "the evidence shows the domestic industry to have been healthy during the entire period from the inception of import competition to the present").

### B. The Commission's Statutory Interpretation Is Not Entitled to *Chevron* Deference.

In its opening brief, Roku explained why the Commission's interpretation is not entitled to *Chevron* deference.  Roku Br. 46-57.  In response, the Commission and Respondents concede that this appeal does not turn on *Chevron* deference. Commission Br. 44, n.15; Respondents Br. 39, n.7.  Accordingly, this Court need not consider *Chevron* deference to resolve this case.

### C. Respondents' Argument that this Court Should Affirm the Commission's Decision Based on the ALJ's Analysis of Post-Complaint Evidence Is Procedurally Improper and Factually Meritless

Respondents argue that if this Court determines that post-complaint evidence should be considered, it should still affirm the Commission's decision because the ALJ's ID found that Roku did not satisfy the domestic industry requirement even as of the close of fact discovery.  Respondents Br. 45-46.  However, under the *Chenery* doctrine, this Court cannot affirm the Commission's decision on a basis that the Commission did not rely upon.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

Although Roku petitioned for review of the ALJ's initial determination, the Commission never considered Roku's post-complaint evidence when concluding that Roku did not satisfy the domestic industry requirement. Appx19 (affirming ID based on "modified analysis"). Rather, the Commission considered only evidence as of the date of the Complaint. Appx19-25. Notably, the Commission itself agrees that this case should be remanded if the Court determines that post-complaint evidence can be considered. Commission Br. 59-60.

Furthermore, on remand, the Commission would likely reverse the ALJ's finding if the Commission considered the post-complaint evidence. As Roku explained in its opening brief, Roku was taking the necessary tangible steps and there was a significant likelihood that the domestic industry requirement would be satisfied in the future. Roku Br. 58-61. Respondents argue that Roku had not started source code development. Respondents Br. 47. But Respondents ignore that the majority of the source code had already been written since it would be re-used from Gazelle's predecessor remotes. Appx10482 (70:12-14; 71:2-14). Respondents also ignore that source code development to implement the '875 patent had already begun with the writing of source code to enable IR database access on the remote. Appx10488 (96:16-25). And contrary to Respondents' argument that there were many necessary tangible steps that Roku had not started that were not merely for commercialization (Respondents Br. 46-47), most of the remaining steps (e.g.

25

engineering validation test, design validation test, mass production) related to commercialization of Gazelle.

Respondents also argue that Roku failed to show a significant likelihood that the domestic industry requirement would be satisfied in the future because Roku changed the Gazelle release date in order to accommodate higher priority items. Respondents Br. 48.  However, Respondents cite no legal precedent requiring a domestic industry product to be prioritized over all other company objectives. Additionally, the record contains ample evidence that Roku was proceeding with development of Gazelle and was on track to meet the development milestones.  Roku Br. 13-16, 58-61.

### D.    The ALJ's Per Se Exclusion of Events After the Fact Discovery Cutoff Constitutes Additional Prejudicial Error.

In its opening brief, Roku showed that the ALJ prejudiced Roku by excluding evidence regarding events occurring after the close of fact discovery based on a misapprehension that the domestic industry requirement precludes consideration of such evidence as a matter of law.  Roku Br. 61-62.  Roku explained that the ALJ should have applied the normal test for allowing new evidence after the close of discovery.  Roku Br. 61-62.

The Commission and Respondents assert that the ALJ applied the normal test for new evidence.  Commission Br. 59, n.22; Respondents Br. 54-55.  But they are wrong.  Based on a mistaken understanding of the applicable law, the ALJ refused

to admit *any* evidence regarding developments after the close of fact discovery and stated, "You know Commission Law.  There is no development after the close of fact discovery that could be used in any case to prove in the process."  Appx10679 (621:24-622).

### E.  The Commission Correctly Held That Domestic Industry in the Process of Being Established Does Not Require Existence of a Physical Article Protected by the Patent.

Respondents argue that the Commission's determination should be affirmed on an alternate basis—that a domestic industry in the process of being established requires an existing physical article.  Respondents Br. 49-53.  However, the Commission held that a physical article is not required, and the *Chenery* doctrine precludes this Court from affirming the Commission's determination on a ground that the Commission did not rely upon.  *Chenery*, 318 U.S. 87.  Moreover, since the Commission has not had an opportunity to brief this issue, that further counsels against this Court reaching that issue in this appeal.

But if this Court decides to consider this issue, it should affirm the Commission's holding that an actual article is not required.  First, the Commission's holding is consistent with the statutory language because the phrase "in the process of being established" connotes activity that will result in establishment of an industry relating to articles protected by the patent in the future.  Roku Br. at 35-37.  Respondents argue that the statute requires a physical article because it "says, twice,

there must be 'articles protected by the patent.'" Respondents Br. 50. But the statutory text first states that an industry relating to the articles can either "exist" or be "in the process of being established." 19 U.S.C. § 1337(a)(2). And the second reference to "articles protected by the patent" relates to what is required to show an *existing* industry. *Id.* § 1337(a)(3). Additionally, nothing in the statutory language supports treating the economic and technical prongs differently by limiting "in the process of being established" to only the economic prong. Furthermore, requiring an existing physical article would eliminate a key distinction between an *existing* domestic industry and a domestic industry *in the process of being established*.

The legislative history also supports the Commission's holding because it explains that an industry would be in the process of being established if the patent owner is "actively engaged in steps leading to the exploitation of the intellectual property, including *application engineering, design work, or other such activities*." H.R. Rep. No. 100-40, pt. 1, at 157-58 (1987) (emphasis added). There is no doubt that design work and application engineering occur *before* completion of an actual physical product.

Respondents cite several cases for the proposition that the Federal Circuit "has held that section 337 requires 'actual' articles protected by the patent." Respondents Br. 50-51. However, none of those cases involve an industry in the process of being established—they all involve an existing domestic industry.

28

## III.   THE COURT SHOULD VACATE THE COMMISSION'S INVALIDITY DETERMINATION REGARDING THE EXPIRED '511 PATENT.

Although the Commission agrees that its determination regarding the '511 patent should be vacated due to the patent's expiration, Respondents argue that this Court should affirm that determination.  Commission Br. 61; Respondents Br. 56-60.  Respondents argue, citing this Court's non-precedential *Microsoft* opinion, that there is a "live controversy" because of a stayed district court action involving the '511 patent.  Respondents Br. 56 (citing *Microsoft Corp. v. ITC*, No. 2012-1445, 2014 WL 10209132, at *1 (Fed. Cir. Jan. 3, 2014) (nonprecedential)).  However, this Court's precedential *INVT* decision rejected that exact argument, holding that "because ITC decisions on patent infringement or invalidity do not have preclusive effect on district court litigation, a decision by this court does not have enough 'collateral consequences' to avert mootness, even though a pending district court case involves the same issues."  *INVT SPE LLC v. ITC*, 46 F.4th 1361, 1370 (Fed. Cir. 2022).  Indeed, *INVT* expressly distinguished *Microsoft* as a "non-precedential opinion, where the patent expired after the court's decision on the merits, and no party raised the issue of the patent's imminent expiration or mootness until after the petition for rehearing *en banc* was denied and two days before the mandate was set to issue."  *Id.*  Here, like *INVT* and unlike *Microsoft*, Roku and the Commission promptly requested vacatur due to mootness.  ECF No. 37; Commission Br. 61; Roku Br. 63.

Respondents argue that this Court should disregard *INVT* because indefiniteness is a "pure question of law that this Court reviews *de novo.*" Respondents Br. 57. However, claim construction "is a question of law … subject to a determination of underlying facts." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016). Respondents cite to the standards of review articulated in *Star Scientific, Inc. v. RJ Reynolds Tobacco Co.*, 655 F.3d 1364 (Fed. Cir. 2011) and *Spansion, Inc. v. ITC*, 629 F.3d 1331 (Fed. Cir. 2010), but those standards were abrogated by the Supreme Court's subsequent *Teva* holding. *See Teva Pharm. USA v. Sandoz, Inc.,* 574 U.S. 318, 331-33 (2015) (subsidiary factual findings for claim construction and indefiniteness are reviewed for clear error).

Moreover, Respondents' "legal question" distinction is also contradicted by this Court's precedent. For instance, in *Hyosung*, this Court found the appeal moot in the context of an ITC determination involving, *inter alia*, claim construction. *See Hyosung TNS Inc. v. ITC*, 926 F.3d 1353, 1356-57 (Fed. Cir. 2019). Likewise, in *INVT*, the principal issue for the expired patent was claim construction. *See* INVT Br. 46-56, *INVT SPE LLC v. ITC*, No. 20-1903, ECF No. 34 (Fed. Cir. Oct. 28, 2020).

Respondents cite *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1308 (Fed. Cir. 2011) in support of their argument. Respondents Br. 59. But *Powertech* merely confirms that district courts cannot ignore this Court's holdings in ITC appeals—it says nothing about pure legal issues being immune from mootness.

30

Indeed, *INVT* expressly distinguished *Powertech*, noting that "Powertech did not involve mootness." *INVT,* 46 F.4th at 1370.

## CONCLUSION

For the foregoing reasons, Roku respectfully requests that this Court reverse the Commission's invalidity determination for claim 10 of the '875 patent, vacate the Commission's domestic industry determination, vacate the Commission's invalidity determination for claim 5 of the '511 patent, and remand the case to the Commission.

Respectfully submitted,

/s/ *Jonathan D. Baker*

Jonathan D. Baker
Dino Hadzibegovic
Mark H. Rogge
DICKINSON WRIGHT RLLP
615 National Avenue, Suite 220
Mountain View, CA 94043
Telephone: (408) 701-6180

Craig Y. Allison
DICKINSON WRIGHT PLLC
424 Church Street, Suite 800
Nashville, TN 37219
Telephone: (408) 701-6117

Steven R. Daniels
Michael D. Saunders
DICKINSON WRIGHT PLLC
607 W. 3rd Street, Suite 2500
Austin, TX 78701
Telephone: (512) 770-4200

*Counsel for Roku, Inc.*

Dated: May 3, 2024

**CERTIFICATE OF SERVICE**

On May 3, 2024, the undersigned caused the foregoing document to be filed electronically using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.


*/s/ Jonathan D. Baker*
Jonathan D. Baker
*Counsel for Roku, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief complies with the type-volume limitation of Federal Circuit Rule of Practice 32(b)(1). The brief contains 6,831 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule of Practice 32(b)(2). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

*/s/ Jonathan D. Baker*
Jonathan D. Baker
*Counsel for Roku, Inc.*